239 So.2d 180 (1970)
Valliet DUHON, Plaintiff and Appellant,
v.
Michael BOUSTANY, M.D. and Richard G. Saloom, M.D., Defendants and Appellees.
No. 3149.
Court of Appeal of Louisiana, Third Circuit.
August 27, 1970.
Rehearing Denied September 29, 1970.
*181 Pugh, Buatt, Landry & Pugh, by Lawrence G. Pugh, Jr., Crowley, for plaintiff-appellant.
Nelson, Ormand & Nelson, by Michael A. Dessommes, New Orleans, for defendant-appellee.
Bienvenu & Culver, by A. William Mysing, Jr., New Orleans, Kaliste, J. Saloom, Jr., Lafayette, for defendant-appellee.
Before FRUGÉ, SAVOY and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a medical malpractice suit. Plaintiff alleges that negligent treatment by the two defendant doctors necessitated the amputation of his left leg. Defendants' motion for summary judgment, based on the prescription of one year, was granted and plaintiff's suit dismissed. Plaintiff appealed.
Plaintiff contends: (1) A motion for summary judgment cannot be based on a plea of prescription. (2) There are genuine issues of material fact. (3) The prescription of ten years is applicable.

SUMMARY JUDGMENT BASED ON PLEA OF PRESCRIPTION
Although the issue has not yet been squarely faced by the appellate courts of this state, we conclude that a motion for summary judgment can be based on a plea of prescription. Cases from our federal courts, construing Federal Rule 56 (the source of our summary judgment procedure set out in LSA-C.C.P. Articles 966-968) uniformly hold that a summary judgment for defendant may be granted if the claim asserted against him is barred by the statute of limitations or by laches. Von Clemm v. Smith, 204 F.Supp. 110 (D.C.N.Y.1962); Warn v. Brooks-Scanlon, Inc., 256 F.Supp. 690 (D.C.Or.1966) affirmed C.A. 9th, 1967, 374 F.2d 893, certiorari denied, 388 U.S. 909, 87 S.Ct. 2113, 18 L.Ed. 2d 1348; Barron & Holtzoff, Fed.Prac. & Procedure, Sec. 1245 and the authorities *182 cited in Footnote 73. The rationale of these decisions is that summary judgment should be available to avoid the expense and delay of an unnecessary trial, where there is no dispute as to the facts governing these defenses and the claim is barred as a matter of law.
In support of his contention that summary judgment cannot be based on a plea of prescription, plaintiff first cites Perry v. Reliance Insurance Company of Philadelphia, 157 So.2d 903 (La.App. 1st Cir. 1963). That case is distinguishable since it involved a motion for summary judgment based on exceptions of vagueness and no cause of action.
Plaintiff also cites Creighton v. Karlin, 225 So.2d 288 (La.App. 1st Cir. 1969). That case is very similar to the present matter in that it is a medical malpractice suit in which a summary judgment was filed by the defendant based on prescription of one year. Apparently, the use of this procedural format was not at issue, since the court does not discuss the question. The court found there was a factual issue which had to be resolved before the law of prescription could be applied. Creighton v. Karlin does not support plaintiff's contention that summary judgment cannot be based on a plea of prescription.

GENUINE ISSUE OF MATERIAL FACT
LSA-C.C.P. Article 966 provides in pertinent part that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."
Our jurisprudence construing these statutory provisions has established that the summary judgment procedure is not a substitute for trial on the merits. In considering a motion for summary judgment the court should not seek to determine the merits of any factual issues raised.
The court should determine only whether there is a genuine issue of material fact. All doubts are resolved against the granting of a motion for summary judgment and in favor of a trial on the merits. Kay v. Carter et al., 243 La. 1095, 150 So.2d 27; Acadia Vermilion Rice Irrigating Company v. Broussard, La.App., 185 So.2d 908.
The pleadings, depositions of the physicians, hospital records, and an affidavit by the plaintiff considered on the motion for summary judgment show the following general facts. On November 28, 1965, plaintiff was dancing with his wife at a nightclub when he fell and suffered a simple fracture of the left tibia. The physicians first attempted a closed reduction but the bones became displaced. Defendant doctors then performed an open reduction and secured the bone fragments in place by the use of metal bands and screws. Plaintiff was in the hospital in Lafayette for about a month and then was seen by defendants for treatment of an infection which had already started at the site of the surgery. After about four months a diagnosis of osteomyelitis was made by defendants. They advised plaintiff of the possible necessity of further surgery to combat the infection. Due to the expense involved and the fact that plaintiff was a veteran and could secure medical treatment at the Veterans Hospital without charge, it was decided plaintiff would go to Veterans Hospital in Alexandria for further treatment. At the Veterans Hospital, plaintiff underwent surgery 12 times during the next year and a half for the osteomyelitis. The physicians finally decided the leg should be amputated at the knee and this was done in January of 1968.
Defendants contend that the depositions, hospital records, affidavits, etc. reveal that plaintiff knew or should have known in March of 1966, when he was informed by the defendant doctors, that osteomyelitis had developed and that this condition was caused by negligent treatment. Hence, defendants *183 contend the filing of this suit on December 1, 1968 is barred by the prescription of one year.
On the other hand, plaintiff takes the position that although he knew his leg had become infected as early as March of 1966, he did not know the defendant physicians had been guilty of negligent treatment nor that his leg might have to be amputated, until shortly before the amputation in January of 1968. In plaintiff's affidavit filed in the record, he says:
"On or about November 28, 1965, I sustained a simple fracture of my left leg and on that same day I entered St. Ann's Infirmary, Lafayette, Louisiana, and consulted Dr. Richard G. Saloom for treatment. On the following day Dr. Saloom placed my leg in plaster and reduced the fracture. Following that an operation was performed on my leg by Dr. Saloom and his associate, Dr. Michael E. Boustany. These doctors continued to treat me until April, 1966, at which time they informed me that there was a bone infection, and I was referred to the Veterans Administration Hospital in Alexandria, Louisiana, because I was entitled to veterans benefits, and it appeared that the treatment of my condition would be prolonged. I was then treated off and on at the Veterans Administration Hospital in Alexandria for the next year and a half. My leg would appear to get better and then it would become worse. Finally, in January, 1968, I was informed by the doctors at Veterans Administration Hospital that my leg would have to be amputated. This was the first indication that I had that I might possibly lose my leg, and it was then that I first realized that the initial treatment that I had received from Drs. Boustany and Saloom may have been improper."
We think it is apparent that a genuine issue of material fact has been raised. That issue is whether plaintiff knew or should have known more than a year prior to the filing of this suit that he had a cause of action against the defendant physicians. Lucas v. Commercial Union Insurance Company, 198 So.2d 560 (La.App. 1st Cir. 1967) discusses the difficult legal problems which arise in cases of this type and correctly states the law:
"The rationale of the applicable jurisprudence appears to be that the mere commission of a tort does not per se give rise to an action in damages. The entitle one to sue on a tort, he must allege and prove the sustaining of loss or damage as a result thereof. It is the combination of two factors, namely, the tort and resulting damages, that gives rise to the cause of action. Until the damage is sustained, there is no cause of action against the tort feasor. Since plaintiff has no claim until the cause of action has arisen, he must be conscious or aware, as would be a reasonable person under similar circumstances, of both the tort and damage before he can sue, consequently prescription does not begin to run against him until he has knowledge of both said indispensable elements of his claim."
Prosser on Torts, 3rd Ed. Sec. 30 at pages 147-148 discusses the particular difficulty in applying the statute of limitations to medical malpractice:
"It follows that the statute of limitations does not begin to run against a negligence action until some damage has occurred. This has led to real difficulties where, as is frequently the case in actions for medical malpractice, the statute has run before the plaintiff discovers that he has suffered any injury at all. The older approach to such cases was a literal application of the statute to bar the action, regarding it as intended to protect the defendant not only against fictitious claims, but also against the difficulty of obtaining evidence after lapse of time even when he is confronted with a genuine one; and considering the hardship upon the plaintiff as merely part of the price to be paid for such protection. The obvious and flagrant injustice *184 of such cases has led to the adoption of a series of transparent devices to get around the rule. Thus the negligent treatment, or at least the defendant's duty, is held to continue until the relation of physician and patient has ended; or the court finds fraudulent concealment of the damage, which tolls the running of the statute; or it finds `constructive' fraud in silence with probable knowledge; or the failure to discover and remove the sponge or other foreign object left in the plaintiff's body is held to be `continuing' negligence. Quite recently there have been a wave of decisions meeting the issue head-on, and holding that the statute will no longer be construed as intended to run until the plaintiff has in fact discovered that he has suffered injury, or by the exercise of reasonable diligence should have discovered it. While there will undoubtedly be cases in which this will result in shifting the hardship which must be borne by some one to the defendant, it has been said that `If, as is to be hoped, the resulting jeopardy to defendants produces a greater measure of care in connection with surgical operations, so much the better.'"
In the present case plaintiff says he did know the initial treatment by defendants may have been improper, until he was told his leg had to be amputated. Defendants say he should have known of the negligent treatment when he was informed of the infection in March of 1966. This clearly raises an issue of fact. Did plaintiff know, or should he have known, that the start of infection meant negligent treatment.
Furthermore, plaintiff contends he did not know he had suffered an injury until the leg was amputated. Defendants say the infection manifested the injury, although the full extent of damage did not become apparent until the amputation. Defendants cite jurisprudence which holds that in such a situation prescription begins to run from the date the injury first becomes manifest. Marquette Cas. Co. v. Brown, 235 La. 245, 103 So.2d 269; Luke v. Caddo Transfer & Warehouse Company, 11 La.App. 657, 124 So. 625. Nevertheless, a factual issue is presented. Did plaintiff know, or should he have known, when the infection started, or at some later point during his prolonged treatment, that he had suffered a tortious injury.
Having reached this conclusion, it is unnecessary for us to consider plaintiff's contention that the prescription of ten years, rather than one year, applies.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that the motion for summary judgment be denied and this case be remanded to the district court for further proceedings in accordance with law and the views expressed herein. All costs of this appeal are assessed against the defendants appellees.
Reversed and remanded.

On Application for Rehearing.
En Banc. Rehearing denied.