323 So.2d 202 (1975)
Valliet DUHON, Plaintiff-Appellant,
v.
Richard G. SALOOM and Michael E. Boustany, Defendants-Appellees.
No. 5240.
Court of Appeal of Louisiana, Third Circuit.
November 20, 1975.
Rehearing Denied December 17, 1975.
Writ Refused February 6, 1976.
*203 Pugh, Buatt, Landry & Pugh by Lawrence G. Pugh, Jr., Crowley, for plaintiff-appellant.
Davidson, Meaux, Onebane & Donohoe by Timothy J. McNamara, Lafayette, David E. Walle and Robert N. Ryan of Bienvenu & Culver, New Orleans, Kaliste J. Saloom, Jr., Lafayette, for defendants-appellees.
Before CULPEPPER, DOMENGEAUX and PAVY, JJ.
PAVY, Judge.
This malpractice suit was previously before this court on an appeal from a prescription-based summary judgment which was reversed. (239 So.2d 180). On remand, defendants filed (subsequent to answer) exceptions of prescription. The case was set for trial before a jury, but over plaintiff's objections, the lower court held an in limine hearing and sustained the exception. Plaintiff has appealed, complaining that the prescription issue should have been submitted to the jury, that it could not be disposed of except at trial and that the trial judge was in error in sustaining the exception.
Plaintiff relies on the language of the second paragraph of Code of Civil Procedure Article 929 which, in part, provides:
"If the peremptory exception has been pleaded in the answer, or subsequently, but at or prior to the trial of the case, it shall be tried and disposed of on the trial............."
In Babineaux v. Pernie-Bailey Drilling Company, 261 La. 1080, 262 So.2d 328 (1972) an exception of no right of action (which is completely equivalent to one of prescription for the procedural question now at hand) had been filed apparently after answer to the original petition but before any answer to an amended and supplemental petition. Plaintiff urged that it was entitled to have the trial jury determine the question of whether there existed a right of action. The court stated:
"The next question before us is whether our civil procedure allocates to the trial judge in jury cases the determination, in limine, of the right of the parties to bring the action where factual evidence must be evaluated in order to arrive at the answer. Our Code of Civil Procedure Article 929 states that the declinatory, dilatory, and peremptory exceptions, when pleaded before answer, `shall be tried and decided in advance of the trial of the case.' When the peremptory exception is pleaded in the answer but prior to trial, it may be disposed of on the trial or in limine. See Redactors' Comment (b) under C.C.P. Art. 929.
We could, under the strict language of the Code and the particular facts of this case, apply the mandate of our Code of Civil Procedure that this peremptory exception of no right of action had to be tried `in advance of the trial of the case', since, as we have previously noted, no answer has been filed to the last amended and supplemental petition, the petition which raised the issue of plaintiff's good faith in her marriage to Babineaux. However, even if we were to consider the exception as filed in the answer or after answer, we would find no abuse of discretion in the trial court's disposing of the exception in limine.
Even in federal practice, where judge functions are far more limited in pretrial proceedings in jury cases than in our state courts, certain issues are disposed of in limine by the trial judge without jury consideration where a question of law is presented as to whether a plaintiff has a right to claim a particular remedy. Both the motion to dismiss for failure to state a claim, Federal Civil Procedure Rule 12(b)(6), and the motion for judgment on the pleadings, Rule 12(c), which convert into motions for summary judgment under Rule 56 where matters outside *204 the pleadings are considered, are disposed of by the trial judge alone."

......
Both before and after the Babineaux decision, this court ruled similarly. See Hebert v. Armstead, 227 So.2d 636 (La.App., 3d Cir., 1969); Duhon v. Lafayette General Hospital, 286 So.2d 166 (La.App., 3d Cir., 1973). We think the issue is now settled. The trial judge did not err in disposing of the exception in limine.
Plaintiff sustained a simple fracture of his left leg on November 28, 1965. Dr. Richard G. Saloom, one of the defendants, performed an unsuccessful closed reduction of the fracture. Later Dr. Saloom and Dr. Michael E. Boustany, also made defendant, performed a surgical reduction. Subsequently, osteomyelitis (infection of the bone) set in at the fracture site, and plaintiff was treated by these doctors until April, 1966, when he decided to have further treatments at the V. A. Hospital in Alexandria because of his limited means. He was treated at the V. A. Hospital off and on, and finally, in January of 1968 the leg was amputated. Suit was filed on December 31, 1968.
Plaintiff contends the treatment continued until within one year of the suit and prescription started within that year. It is clear from the evidence that all treatment to plaintiff after April, 1966, was at the V. A. Hospital, that he never consulted or was treated by defendants at all after that time and had no professional contact whatsoever with them. The rule that prescription does not commence until the treatment ceases is not applicable here.
Next plaintiff contends that the ten-year prescription is applicable to his claim against Dr. Saloom because he guaranteed a result. There were general discussions between doctor and patient regarding the length of recovery; the doctors' expressions amounted to no more than a hopeful estimate of the rehabilitation time. No guarantee whatsoever was given, and the ten year prescription is not applicable.
On the prior appeal from the summary judgment, plaintiff had maintained that the prescription did not start until the amputation because he did not know of the tortious nature of the injury and because the injury was not manifested until the amputation. This court held that there was a factual issue as to when plaintiff knew of the tortious nature of the injury but practically ruled against him on the other issue. Now, plaintiff seems to have abandoned the claim as to when knowledge of the tortious nature of the injury began and relies mainly on the argument that the injury was not sustained or at least made sufficiently manifest until the amputation.
In Phelps v. Donaldson, 243 La. 1118, 150 So.2d 35 (1963) the Supreme Court ruled that the one-year prescription of Civil Code Article 3536 applied to a malpractice suit. Civil Code Article 3537 provides that the one-year prescription begins". ... [when] the injurious words, disturbance or damage was sustained."
In Louisiana, the focus is mainly on the time the damage is sustained rather than the time of the commission of the tortious act. Ordinarily, these two events are concurrent, but problems are presented when the consequences of the tortious injury are delayed in manifestation, or are insignificantly manifested initially and progress to a more serious condition or when the consequences are multiple and are evident at different times. Also, in malpractice suits, knowledge of the doctor's negligence is often not known to the patient until much later than the commission of the tortious act or malpractice. Generally, it may be said that prescription does not commence to run until plaintiff has actual or constructive knowledge of the tortious act, the damage and the causal relation between the tortious act and the damage. See Lucas v. Commercial Union Insurance Company, 198 So.2d 560 (La.App., 1st Cir. 1967); Cartwright v. Chrysler Corporation, 255 La. 598, 232 So.2d 285 *205 (1970); Steel v. Aetna Life and Casualty Company, 304 So.2d 861 (La.App., 3rd Cir. 1975), Cert. denied at La., 315 So.2d 144; Marquette Casualty Company v. Brown, 235 La. 245, 103 So.2d 269 (1958); Luke v. Caddo Transfer and Warehouse Company, 11 La.App. 657, 123 So. 444; Hunter v. Sisters of Charity, 236 So.2d 565 (La.App., 1st Cir. 1970); Luke v. Caddo Transfer and Warehouse Company, 11 La.App. 657, 124 So. 625 (1929); Christian v. Danielle Battery Manufacturing Company, Inc., 279 So.2d 214 (La.App., 2nd Cir. 1973); Duhon v. Lafayette General Hospital, 286 So.2d 166 (La.App., 3rd Cir. 1973).
The doctrine of constructive notice is applicable in prescription cases. See the Lucas and Cartwright cases above. In the Cartwright case the Supreme Court stated:
"..........whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of everything to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry, is sufficient to start the running of prescription."
Plaintiff has the burden of proving his lack of knowledge as to the injury and also circumstances which establish the damage was not sustained within a year of the suit. Lucas v. Commercial Insurance Co., supra; Steel v. Aetna Life and Casualty Co., supra; Hunter v. Sisters of Charity, supra; Vanguard Underwriters Insurance Co. v. Ray's Plumbing Co., Inc., 312 So.2d 111 (La.App., 3rd Cir. 1975).
In the Lucas case, supra, the court stated:
".......even though the full extent of the damages or loss may not be immediately ascertainable, nevertheless, if the aggrieved party is aware of the claim resulting from the tortious conduct, the entire claim, including that for damages not then determinable, prescribes in one year from the date of the commission of the wrong."
In the Steel case, supra, a child became paralyzed and incontinent after an operation. The argument was made that the prescription was not triggered until the permanent nature of the paralysis and incontinence was determined. The court ruled that the rule that prescription does not run against one who is ignorant of the existence of facts which would entitle him to bring suit, applies only when such ignorance is not willful and does not result from negligence of the plaintiff and the doctrine has been limited to cases where the physician has concealed the fact of the obligation or has committed other acts which tend to hinder, impede or prevent the injured party from ascertaining knowledge of the existence of the injury.
On the question of when he became aware of the tortious action of defendants, plaintiff testified as follows:
"Q. Did you think at that time that Dr. Saloom or Dr. Boustany had done something wrong?
A. Well, at that time, before my leg was amputated, I didn't know. After my leg was amputated, that's when I decided something had been done wrong.
Q. And do you remember when you made that decision?
A. That was in December of '68.
Q. Do you recall the circumstance of that, about when you decided something had gone wrong?
A. Because you just don'twhat I had in mind, you just don't lose a leg with a simple fracture."
Osteomyelitis is a chronic and persistent bone infection. It can recur for years and amputation of the affected limb is often the only realistic solution. Plaintiff's hospital record shows that various attempts, surgical and otherwise, were made to eliminate the bone infection, but it kept recurring. He was admitted April 14, 1966, discharged *206 October 7, 1966, admitted November 28, 1966 and discharged May 8, 1967. He had outpatient checkups on May 18, 29 and June 6, 1967, was readmitted June 11, 1967 and discharged June 12, 1967. He had outpatient checkups on July 11, August 10, October 10 and November 14, 1967. His next admittance was January 19, 1968, shortly before the amputation.
His hospital record shows the following entry was made on October 6, 1966:
"The patient desires that at least one more effort be made to save the leg from amputation."
On November 16, 1967, the following entry was made in his hospital record to wit:
"Do not think healing will occur with this drainage present. Future surgery will need BK Amp. Pt. alerted to fact but desires it to stay as is."
This last entry was made at the time of a consultation with two doctors, both of whom actually testified to the consultation and the above entry in his record.
We do not understand how plaintiff did not conclude that there was negligent treatment before the amputation. It was directly caused by the osteomyelitis. He had lived with the osteomyelitis for approximately eighteen months and knew, as a substantial probability, that the amputation would be necessary. The osteomyelitis was nearer the negligent action in time and cause than the amputation itself.
Surely for over a year, and probably for more than two years, prior to the suit plaintiff knew or ought to have known that the amputation was likely. Under the cited jurisprudence, knowledge of the osteomyelitis itself would probably have been sufficient to start prescription. However, here we have not only actual knowledge of the osteomyelitis but a strong awareness of the probability of the amputation.
Plaintiff argues that he sues only for the amputation and that different consequences of the tortious action should prescribe separately. A sort of bifurcation was recognized in the case of Butler et al. v. Fidelity Casualty Co., 207 So.2d 805 (La.App., 1st Cir.1968). In that case, plaintiff's claim for damages suffered prior to a premature birth were held to have prescribed but not those for the premature birth. There was no certain knowledge of the later manifested consequences (the premature birth) as was the case here. Also, the later consequence was directly caused by the injury; it did not result from the earlier manifested consequences as in this case.
Plaintiff cites the case of Guderian v. Sterling Sugar & Railway Co. at 151 La. 59, 91 So. 546 (1922) involving the loss of an eye. There was a minor blow to the eye which required slight medical attention. Later plaintiff saw spots and a doctor told him the condition was caused by kidney or digestive problems. On April 23, his eyesight started failing and the same physician sent him to an eye specialist from whom he learned his true condition. Suit was filed April 22 of the following year. There was no knowledge of a causal relationship between the tortious action and the damage until April 23, which was within a year prior to suit. That is entirely different from the case at hand.
Plaintiff cites Perrin v. Rodriguez, 153 So. 555 (La.App.1934). A dentist extracted teeth and left some of the tooth roots in the jaw. In complete innocence, he assured plaintiff that the continued pain was due to misfit of the dentures. Plaintiff did not learn of the remaining roots until he consulted an oral surgeon within a year of suit. Prior to a year before suit, plaintiff had no knowledge of the tortious act or that it caused the damage.
Herein, a manifestation of substantial damage occurred long prior to a year before suit; long before that year, plaintiff had every reason to know or suspect the mistreatment.
The lower court's judgment is affirmed.
Affirmed.