376 So.2d 342 (1979)
Thomas LYNCH et al., Plaintiffs-Appellants,
v.
Dr. William F. FOSTER et al., Defendants-Appellees.
No. 7101.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1979.
Writs Refused November 30, 1979.
*343 Gravel, Roy & Burnes, Chris J. Roy, Alexandria, for plaintiffs-appellants.
Brame, Bergstedt & Brame, Frank M. Brame, Raggio, Cappel, Chozen & Berniard, Fred L. Cappel, Thomas W. Sanders, Lake Charles, for defendants-appellees.
Before WATSON, CUTRER and DOUCET, JJ.
WATSON, Judge.
Plaintiffs, Thomas and Gwendolyn Lynch, husband and wife, brought this medical malpractice suit against defendants, Dr. William Franklin Foster and his insurers, The Medical Protective Company and St. Paul Fire & Marine Insurance Company. A minor son, Thomas L. Lynch, II, was substituted as plaintiff for his mother, Gwendolyn, after her death on February 6, 1976.
Gwendolyn Lynch was paralyzed in both legs following a bilateral cordotomy performed by Dr. Foster on April 19, 1971, and a second surgical procedure on April 21, 1971. Suit was filed on March 20, 1973, and defendants filed an exception of prescription, which was sustained by the trial court. The trial court concluded: ". . . the preponderance of the evidence is to the effect that both Mr. and Mrs. Lynch did know of the paralysis and paraplegic status of Mrs. Lynch shortly after the second operation took place." (TR. 404). Plaintiffs have appealed from the dismissal of their suit.
The cause of action asserted by plaintiffs occurred prior to the enactment of LSA-R.S. 9:5628 and is subject to a one year prescriptive period. LSA-C.C. art. 3536.[1]
The trial court placed on plaintiffs the burden of proving suspension or interruption of prescription, citing Hunter v. Sisters of Charity of Incarnate Word, 236 So.2d 565 (La.App. 1 Cir. 1970). Prior to the Louisiana Supreme Court's decision in Henson v. St. Paul Fire & Marine Ins. Co., 363 So.2d 711 (La., 1978), this burden was on plaintiffs. See the dissent in Henson. Suit was filed in Henson two and one half years after allegedly negligent surgery. The Supreme Court reversed a decision dismissing the suit on an exception of prescription, holding that the burden was on defendant to show that plaintiffs had knowledge of the existence of facts entitling them to bring suit more than a year before the suit was filed. Henson also points out that a petition should be maintained against a peremptory exception in favor of trial on the merits whenever possible. The prescriptive period commences on the date the injured parties had actual or constructive knowledge of facts which would entitle them to bring suit. Lott v. Haley, 370 So.2d 521 (La., 1979); Carroll v. Aetna Cas. & Sur. Co., 363 So.2d 726 (La.App. 2 Cir. 1978), writ denied, 364 So.2d 600; Young v. Clement, 367 So.2d 828 (La., 1979); Perrin v. Rodriquez, 153 So. 555 (La.App.Orl. 1934).
Gwendolyn Lynch was admitted to St. Patrick's Hospital by Dr. Foster on April 14, 1971, on referral from Drs. Boese and Lowrey of Alexandria, Louisiana. At that time, she had no difficulty with her right leg but had weakness and pain in her left. (TR. 342). The pain was apparently a residual effect of radiation treatments in 1970 which had cured a cancerous condition in her female organs. Dr. Foster performed *344 the cordotomy for relief of pain in the left leg and the second surgery to relieve pressure on the spinal cord resulting from the first operation. After the surgery, Mrs. Lynch was placed in a Stryker frame bed. Gwendolyn Lynch remained in St. Patrick's Hospital under the care of Dr. Foster until May 15, 1972, less than a year prior to the filing of suit. During this period Dr. Foster and Mrs. Lynch had an excellent doctor-patient relationship. After over a year at St. Patrick's Mrs. Lynch was discharged to a New Orleans hospital for rehabilitation therapy. Dr. Foster's discharge summary, dictated in August of 1972, states that: "The patient gradually became worse as far as any function in the lower extremities was concerned and over a period of time lost all useful function in the distal lower extremities." (P-4, p. 2).
Dr. F. W. Bennerscheidt, an expert in general surgery, performed a permanent colostomy on Mrs. Lynch on September 8, 1971, over four months after Dr. Foster's second surgery. Dr. Bennerscheidt testified that Mrs. Lynch was fully aware she was a paraplegic at that time.[2] In his opinion, the condition was irreversible. Two nurses also testified that Gwendolyn Lynch was aware of her paralysis and was depressed about her condition.
In deposition on March 29, 1974, Gwendolyn Lynch testified that she knew she was unable to walk after her surgery but did not know why and remained hopeful that she would regain the use of her legs. Dr. Foster testified that he felt the damage was permanent after the second operation, and he told Mrs. Lynch her paralysis was permanent. (TR. 351). Dr. Foster admitted that Mrs. Lynch remained hopeful and stated many times: "I believe Jesus is going to make me walk again." (TR. 353). Thomas Lynch testified that he and his wife continued to hope that her condition would improve. It was not until the personnel at the rehabilitation unit in New Orleans advised them her case was hopeless that they realized the paralysis was in fact permanent. Mrs. Lynch's right leg was subsequently removed at Touro Hospital in New Orleans on June 26, 1973.
Even if Mr. and Mrs. Lynch knew she was permanently paralyzed prior to her discharge by Dr. Foster, this does not establish that they were then aware of a tortious act on his part. In order for prescription to run, plaintiffs must have had actual or constructive knowledge, not only of her condition, but of the existence of facts which would entitle them to bring a malpractice action. Young v. Clement, supra; Hundley v. St. Francis Hospital, 161 Cal.App. 800, 327 P.2d 131 (1958). Obviously, Gwendolyn Lynch would not have remained under Dr. Foster's care if she had known he had inflicted an actionable injury. This factor was recognized as a practical guide by this circuit in Duhon v. Saloom, 323 So.2d 202 (La.App. 3 Cir. 1975), writ refused, 325 So.2d 794. ". . . [P]rescription does not commence until the treatment ceases. . ." 323 So.2d 204. See Perrin v. Rodriquez, supra, and Vol. 5 of Civil Law Translations by the Louisiana State Law Institute at page 465. Other jurisdictions have long recognized that it is unrealistic to expect a patient to file suit against a physician while in his care. See, for example, Schmit v. Esser, 183 Minn. 354, 236 N.W. 622 (1931); Hotelling v. Walther, 169 Or. 559, 130 P.2d 944 (1942); and Frazor v. Osborne, 57 Tenn.App. 10, 414 S.W.2d 118 (1966). Gwendolyn Lynch was admitted to St. Patrick's Hospital as Dr. Foster's patient on April 14, 1971, and remained there as his patient until May 15, 1972, when he discharged her. To hold that any cause of action she may have had prescribed during her hospitalization would be unjust and contrary to reason.
It is not clear from the record whether plaintiffs have a valid malpractice claim against Dr. Foster, since the only testimony about the cordotomy is his own to the effect that permanent paralysis is a well recognized *345 complication that sometimes accompanies this surgery. (TR. 290). We express no opinion as to the merits of the case. However, plaintiffs are entitled to an opportunity to present their evidence. Henson v. St. Paul Fire & Marine Ins. Co., supra.
For the foregoing reasons, the judgment of the trial court herein sustaining defendants' exception of prescription is reversed and the matter is remanded for further proceedings according to law. All costs of trial of the exception and this appeal are taxed to defendants; other costs to await final disposition.
REVERSED AND REMANDED.
NOTES
[1] LSA-C.C. art. 3536:

"The following actions are also prescribed by one year:
That for injurious words, whether verbal or written, and that for damages caused by animals, or resulting from offenses or quasi offenses."
* * * * * *
[2] Neither this surgical procedure nor the two performed by Dr. Foster showed any evidence of residual cancer. (P-4, p. 123; TR. 295).