378 So.2d 1088 (1979)
Raymond CORDOVA, Plaintiff and Appellant,
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY and Dr. A & Dr. B., Defendants and Appellees.
No. 7270.
Court of Appeal of Louisiana, Third Circuit.
December 19, 1979.
*1089 Edwards, Stefanski & Barousse, Homer Ed Barousse, Jr., Crowley, for plaintiff-appellant.
Landry, Watkins & Bonin, Alfred S. Landry, New Iberia, Mouton & Jeansonne, Welton P. Mouton, Jr., Lafayette, for defendants-appellees.
Before CULPEPPER, GUIDRY and YELVERTON, JJ.
CULPEPPER, Judge.
This is a medical malpractice case. The plaintiff is Raymond Cordova. Defendants are Dr. John Tolson, III, Dr. Al. W. Beacham and their insurer, Hartford Accident & Indemnity Company. Defendants' exceptions of prescription were sustained by the trial judge. From a judgment dismissing his suit, plaintiff appeals.
The issue on appeal is the correctness of the trial judge's finding of fact that plaintiff knew or should have known of the malpractice more than one year prior to the filing of this suit.
The facts, as disclosed by the pleadings and by evidence taken at the hearing on the exception of prescription, show that on April 9, 1975 Cordova consulted Dr. Tolson, a urologist in Lafayette, Louisiana. This physician diagnosed a right hydrocele, which is a sac containing fluid located within the scrotum, and a possible left inguinal hernia, both of which needed surgical repair. Plaintiff requested that during the surgery the doctors also perform an elective vasectomy, a procedure to obstruct the tube that transmits sperm from the testicle.
On April 27, 1975, plaintiff was admitted to Lafayette General Hospital for all three surgical procedures. Dr. Tolson performed *1090 the right hydrocelectomy and the vasectomy. The left inguinal hernioplasty was performed by Dr. Edgar Breaux, not a party to this suit. On May 1, 1975, plaintiff was discharged from the hospital.
On May 7, 1975, plaintiff was examined by Dr. Tolson at his office for complaints of swelling of the right testicle. Dr. Tolson indicated in his notes that the swelling was to be expected because of the size of the hydrocele and the recent surgery.
On May 13, 1975, plaintiff called Dr. Tolson's office and spoke with Dr. Beacham, Dr. Tolson's partner, complaining of fever, pain, tenderness and swelling in the right testicle. Dr. Beacham saw plaintiff immediately and made a diagnosis of a right testicle abscess, with pus in the scrotal cavity. Dr. Beacham considered plaintiff to be in a life-threatening situation and admitted him to the hospital. From this point on, plaintiff was not treated further by Dr. Tolson.
At the hospital, plaintiff was first treated by Dr. Beacham with warm compresses and antibiotics, but these did not cure the infection. On May 15, 1975, Dr. Beacham surgically removed the right testicle. Plaintiff was discharged from the hospital on May 21, 1975. Thereafter, he saw Dr. Beacham during seven office visits between May 24 and June 18, 1975, the latter date being the last time he saw Dr. Beacham during 1975.
Approximately three weeks after the second surgery, the plaintiff resumed sexual relations with his wife, and for a period of time had a normal sex life. However, their relationship gradually deteriorated as plaintiff experienced decreasing sex drive. Over a period of months following the second surgery, plaintiff suffered from depression and began to notice that his remaining testicle was shrinking in size.
On April 7, 1976, nine months after he had last seen Dr. Beacham, plaintiff again went to this physician, complaining of possible high blood pressure, dizziness and decreased sex drive. Upon examination, plaintiff was found to have an atrophic solitary left testicle, which had shrunk to less than one-half the normal size. Dr. Beacham also found that the plaintiff had some minimal prostatitis, for which he prescribed sulfur. No medication was given for the loss of libido.
Dr. Beacham saw the plaintiff again on April 21, 1976, at which time laboratory studies were made. On June 22, 1976, plaintiff returned with a complaint of frank impotence. The left testicle was almost completely atrophied. Male hormone shots were administered. On August 11, 1976, Dr. Beacham recommended that plaintiff see Dr. Emil Steinberger, a reproductive biologist in Houston. Plaintiff saw Dr. Steinberger in Houston on August 23, 1976. He diagnosed impotence due to a low male hormone count and commenced treatment with male hormone injections.
Suit was first filed in Acadia Parish on March 18, 1977, and service was made on March 21, 1977. Defendants' exception of improper venue was sustained, and the suit was transferred to Lafayette Parish.
The applicable statute on prescription in medical malpractice cases is LSA-R.S. 9:5628, which provides in pertinent part as follows:
"§ 5628. Actions for medical malpractice
A. No action for damages for injury or death against any physician, chiropractor, dentist, or hospital duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect; provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission or neglect."
Although the above prescriptive statute was adopted after the alleged acts of malpractice, i. e., the surgeries in 1975, the general rule is that statutes of prescription *1091 are remedial in nature and are applied retroactively. Lott v. Haley, 370 So.2d 521 (La.1979). Questions have arisen in the jurisprudence regarding the retroactive application of the three-year limitation provided in R.S. 9:5628, where the malpractice was discovered more than three years after the negligent acts. See Henson v. St. Paul Fire & Marine Insurance Company, 354 So.2d 612 (1st Cir. 1978) reversed by our Supreme Court, 363 So.2d 711 (La.1978) and Lott v. Haley, supra. Nevertheless, in the present case the three-year period is not at issue, so the general rule applies that prescriptive statutes are retroactive.
In construing the one-year prescriptive period contained in R.S. 9:5628, as well as its source statutes, LSA-C.C. Articles 3536 and 3537, our Supreme Court has applied the doctrine of "contra non valentem agere, non currit prescriptio". Under this doctrine, prescription does not run where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. See the recent case of Corsey v. Department of Corrections, 375 So.2d 1319 (La.1979) for a discussion of the doctrine of contra non valentem. See also Henson v. St. Paul Fire & Marine Insurance Company, supra, and Young v. Clement, 367 So.2d 828 (La.1979) where the doctrine was applied in medical malpractice cases.
In the case of Cart-wright v. Chrysler Corporation, 255 La. 598, 232 So.2d 285 (La.1970) our Supreme Court stated as follows the rule as to what is sufficient notice to the plaintiff to commence the running of prescription:
"Whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of every thing to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription.5"
Young v. Clement, supra, is similar in some respects to the present case. There, the plaintiff sued for the wrongful removal of her fallopian tubes and ovaries more than one year after the surgery. Plaintiff contended she did not know until within a year prior to filing suit that the tubes and ovaries were healthy, not inflamed nor malignant, and that the surgery was unnecessary. The defendant physician contended he read to plaintiff the pathology report immediately following surgery, and that from this report she should have known the tubes and ovaries were healthy, and that their removal, therefore, was questionable. Believing that the defendant had read the pathology report to plaintiff following the surgery, the trial judge held she knew or should have known of the malpractice more than one year prior to filing suit. The district court sustained the exception of prescription, and the Court of Appeal affirmed. Our Supreme Court reversed, holding that even if the pathology report was read to Mrs. Young, she could not be held to have sufficient medical understanding to interpret the report to mean that Dr. Clement may have been negligent in removing healthy tissue, and that she must sue within a year or lose her right.
It is noteworthy that in Young v. Clement the Court of Appeal based its decision largely on the rule of appellate review that a finding of fact by the trial judge should not be disturbed unless manifestly erroneous. Nevertheless, the Supreme Court, citing Arceneaux v. Dominque, 365 So.2d 1330 (La.1978), found the trial judge was "clearly wrong" in sustaining the exception of prescription.
Under the above rules of law, we will now review the facts and reach a decision. In his petition, plaintiff alleges the surgeries by Dr. Tolson on April 27, 1975 and by Dr. Beacham on May 13, 1975 were improperly performed, but that he did not learn of the negligence until June 27, 1976. This may be a typographical error, the intended date being June 22, 1976, the date plaintiff first complained to Dr. Beacham of frank impotence.
In his brief, plaintiff argues, emphasizing the testimony of Dr. Steinberger, that the *1092 loss of libido and the inability to perform, i. e., impotence, can be the result of physical or psychological causes, or a combination thereof, and that each case varies according to the circumstances and the characteristics of the individual. Plaintiff then reasons that since it is difficult for even a specialist such as Dr. Steinberger to discover the cause of loss of libido and impotency, it would be unreasonable to require the plaintiff to discover, before Dr. Beacham or Dr. Steinberger, that the cause of his impotence was related to the surgeries performed by the defendant doctors. A summary of plaintiff's argument is stated in his brief as follows:
"Cordova did not find his condition distressing until April 7, 1976, when he consulted with Dr. Beacham with secondary complaints of loss of libido. There was no complaint of frank impotence until June 22, 1976. Mr. Cordova was not referred to a reproductive endocrinologist by Dr. Beacham until August 11, 1976. Cordova did not consult with the reproductive endocrinologist until August 23, 1976.
"Our law does not impose upon a layman the obligation to diagnose a complex medical and psychopathological condition."
It is noted plaintiff does not argue continued negligence during treatment following the surgeries.
In a supplemental brief, defendants make an impressive argument. First, they point to the fact that Mr. Cordova has had much previous experience with doctors and hospitals. As a child, plaintiff had several operations on his hip for osteomyelitis. Also, he had pneumonia, had a previous right hernia repair and removal of a perianal cyst. Defendants also stress the fact that Cordova is an intelligent, sophisticated person. He was previously employed as admissions officer at a college. He is presently employed as administrative assistant to a United States congressman.
Defendants stress the fact that following the surgery by Dr. Beacham on April 27, 1975, Cordova experienced a gradual loss of libido and a gradual reduction in size of his left testicle to about one-half. Defendants point to Cordova's testimony that he knew his libido was diminishing and his left testicle was decreasing in size for several months before he returned to see Dr. Beacham on April 7, 1976. Defendant's argument is that the loss of libido, the loss of potence and the decreasing size of the remaining left testicle, all of which were known to Cordova, constitute notice to plaintiff that these conditions may have resulted from the surgeries performed by the defendant doctors.
The trial judge did not give reasons for his decision. Therefore, we do not know his finding of fact as to exactly when Mr. Cordova knew or should have known sufficient facts to excite his attention and put him on guard to inquire as to the cause of his loss of libido and decrease in size of his testicle. However, the evidence clearly shows plaintiff knew for more than a year before suit that "something was wrong." He testified as follows:
"Q Okay. Did you noticeWhen did you firstAbout the time that you started noticing your sex lifehaving problems with your sex life, did you start noticing your remaining testicle was getting smaller?
A During that period of time ofof a yearWe'll speak over the whole year period,
Q Uh huh.
Ayes, yourit was a gradual getting smaller, and, yes, that was transpiring.
"Q Okay. Would you say that by the end of the year it had gotten to what size, would you say?
A Huh, by the end of the year, it had gotten to about the size of aan olive.
Q Okay. AboutWould that be about a third of the size it was before?
A Huh, it would be about half the size it was before.
Q Okay. AndAnd youyou made note of that? I mean, you knew that?
A Well, it'sI don't know how to answer that. Yeah, youI think youyou *1093 knew it wassomething wasn't right, and
Q Uh huh.
Awhether or not you want to admit to yourself exactly what isn't right,
Q Yes.
Ait's just something youyou just put off in your mind...." (Tr 144-46, Emphasis added).
Were it not for the case of Young v. Clement, supra, we would have little difficulty in holding the trial judge in the present case was not clearly wrong in finding as a fact that Mr. Cordova knew or should have known, more than a year before he filed suit, sufficient facts to excite his attention and put him on inquiry that the defendant doctors had committed malpractice during the surgeries. Although Young v. Clement causes us some concern, we think the facts of that case are stronger for the plaintiff than those in the present matter. In Young, our Supreme Court concluded the plaintiff should not have been held to understand the complex pathology report, which may or may not have meant that the surgeon had wrongfully removed healthy ovaries and tubes. In the present case, there is no question that Mr. Cordova knew something was wrong. He knew that he suffered an infection following the first surgery by Dr. Tolson, and he knew that he suffered diminished libido and decreased size of his left testicle following the second surgery by Dr. Beacham. We cannot say that the trial judge was clearly wrong in finding as a fact that a man of Cordova's experience and intelligence did have sufficient notice of the malpractice.
Before concluding our opinion, we recognize that our decision may be in conflict with certain holdings in Lynch v. Foster, 376 So.2d 342 (3rd Cir. 1979) rendered on October 10, 1979 by another panel of this Court. In that case, the panel held that the prescription of one year in medical malpractice cases is suspended as long as the patient remains under the care of the doctor alleged to have inflicted the actionable injury. As authority, the panel cites Duhon v. Saloom, 323 So.2d 202 (3rd Cir. 1975), and quotes therefrom a phrase which reads: "... prescription does not commence until the treatment ceases ...." We have carefully studied Duhon and conclude it is not authority for the rule stated. The phrase quoted from Duhon is dicta. Duhon was actually decided under the established rule, discussed above, that the prescription of one year in medical malpractice cases begins from the date the plaintiff knew or should have known of the alleged negligent act. Of course, this rule is also stated in the above quoted statute, LSA-R.S. 9:5628. Numerous decisions from our appellate courts and from our Supreme Court establish that the rule is as stated in the statute. We find no case from the appellate courts of Louisiana which have held that prescription in medical malpractice cases is suspended as long as the plaintiff is under the treatment of the defendant doctor.
The decision in Lynch v. Foster, supra, cites three cases from other states as holding that prescription does not commence while the physician-patient relationship continues between the plaintiff and the defendant physician. We note that the annotation in 80 ALR 2d 368 indicates this rule has been followed in only a few states, and even in these cases there is a question as to whether they involved continuing negligent treatment. The majority rule is substantially the same as that stated in LSA-R.S. 9:5628, and as developed by Louisiana jurisprudence discussed above.
We also disagree with the holding in Lynch v. Foster, supra, that the defendant doctor has the burden of proving that plaintiff had knowledge of the existence of facts entitling him to bring suit for more than a year before the suit was filed. The panel in Lynch cites Henson v. St. Paul Fire & Marine Insurance Company, 363 So.2d 711 (La. 1978) as authority for placing the burden of proof on the doctor. In our view, the majority opinion by our Supreme Court in Henson does not establish such a burden of proof. The issue of burden of proof is not discussed by the majority. In the later case of Young v. Clement, 367 So.2d 828 (La. 1979) discussed above, the court states as to the defendant hospital:

*1094 "Plaintiffs failed to show an ignorance of the factual basis for their claim against the hospital existing in the year before the claim against the hospital was filed."
The general rule is that where plaintiff's petition shows on its face that the prescriptive period has run, and plaintiff is contending that there was a suspension or interruption of prescription, the burden is on the plaintiff to prove the suspension or interruption. Hunter v. Sisters of Charity of Incarnate Word, 236 So.2d 565 (1st Cir. 1970) and the authorities cited therein. We do not think our Supreme Court would change this established rule without a full discussion.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff.
AFFIRMED.