650 So.2d 824 (1995)
LABBE SERVICE GARAGE INC., Claude Labbe, Esta Labbe and Isadore Labbe, Plaintiffs-Appellants,
v.
LBM DISTRIBUTORS, INC., et al., Defendants-Appellees.
No. 94-1043.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1995.
*825 Jeffrey Ackermann, Lafayette, for Labbe Service Garage Inc., et al.
Steven J. Dupuis, Lafayette, for LBM Distributors Inc., et al.
Thomas Martin McNamara, Lafayette, for Chevron USA Products Co.
Ian Douglas Lindsey, Baton Rouge, for Kai Midboe, Secretary, Dept. of Environmental Quality.
William C. Kaufman, III, Baton Rouge, for Federated Ins. Co.
Before DOUCET, C.J., and THIBODEAUX and SULLIVAN, JJ.
SULLIVAN, Judge.
This suit concerns damage to immovable property. Plaintiff, Labbe Service Garage, Incorporated,[1] sued defendants, LBM Distributors, Inc., Federated Mutual Insurance Company (LBM's insurer), Chevron USA and the State of Louisiana, Department of Environmental Quality (DEQ), alleging that these defendants were liable for soil and groundwater contamination caused by leaking underground storage tanks on plaintiff's property in Duson, Louisiana. The trial court granted defendants' motions for summary judgment, based on pleas of the peremptory exception of prescription, and dismissed plaintiff's suit. In so ruling, the trial court determined that the plaintiff knew of the damages with sufficient certainty more than one year prior to the filing of this suit. After its motion for new trial was denied, plaintiff appealed.
On appeal, plaintiff contends that summary judgment on the prescription issue in this case was improper. After thoroughly reviewing the record, we conclude that the trial court erred in granting summary judgment. Accordingly, we reverse.

FACTS AND PROCEDURAL HISTORY
Plaintiff operated a gas station/automotive repair shop from 1946 to 1987 on the property at issue, which is located on U.S. Highway 90 in Duson. Gulf Oil Corporation had originally installed the tanks and owned them until March 1, 1982, when the tanks were sold to LBM, a regional bulk distributor. Gulf was later dissolved in a corporate merger with Chevron. At some point after the 1987 closure of the business, the Labbe brothers decided to attempt to lease the premises to a third party for use as a convenience store. The premises underwent refurbishment, *826 including the removal of the three underground storage tanks.
On September 20, 1990, the three tanks, which LBM owned, were removed from the ground by Boss Construction Company. Claude and Isadore Labbe were present for the removal, as were Richard Goudeau of DEQ and Russell LeBlanc of LBM. The environmental contracting division of John E. Chance and Associates removed soil samples from four points surrounding the site after the tanks were removed on that date. Thereafter, during October and November of 1990, approximately 100 cubic feet of dirt which had surrounded the tanks was removed from the property.
On March 11, 1991, Claude Labbe called Richard Goudeau of DEQ to express his concern about possible contamination left on the site in unremoved product line trenches and near the gas pump dispenser island. DEQ investigated the site on April 10, 1991 and found contamination. The product lines were removed. On May 7, 1991, Richard Goudeau of DEQ wrote a letter to LBM to confirm the April 10, 1991 test results. Goudeau also ordered LBM to hire a Response Action Contractor from a DEQ approved list to perform an Environmental Site Assessment (ESA). The Labbe brothers were not sent a copy of this letter nor were they made aware of the April 10 preliminary test results.
LBM hired Acadian Environmental, Incorporated (Acadian) to perform the ESA. Andre Aucoin of Acadian removed soil samples from the property and performed tests thereon in July of 1991. His first report indicated that the tests performed revealed evidence of contamination. He recommended further testing. A second, more thorough ESA was thereafter performed by Acadian. As a result of this ESA, which was detailed in an August 29, 1991 report, Acadian concluded that the property suffered from both soil and groundwater contamination. Acadian proposed a series of environmental remediation techniques designed to decontaminate the site. The Labbe brothers were informed of the conclusions reached in both ESA reports as each was completed.
This suit was filed on May 4, 1992 against LBM, Chevron and the DEQ. Sometime thereafter, plaintiff filed an amended and supplemental petition which added Federated Mutual Insurance Company as a defendant.[2] On June 30, 1992, Chevron filed an exception of prescription in this matter. Chevron is the only defendant to have filed this exception. No hearing on this exception was ever held, and the trial court did not rule on the merits of this exception.
The parties proceeded with discovery. On March 15, 1993, the depositions of Claude, Isadore and Esta Labbe were taken. Claude was questioned and answered, in part, as follows:
Q. Mr. Labbe, when did you first become aware of this contamination that's alleged?
A. November 20I'm sorry, September 20, 1960 [sic] is when they took the tanks off.
Q. I'm sorry, I didn't get the year.
A. 1990, in September.
Q. Is that when you first became aware that there was a problem?
A. No, no. I didn'tI was not aware. It's DEQ that was aware of it.
Q. But when did you first become aware of it?
A. The same day Richard Gaudet [sic, Goudeau] came over.
Additionally, during Esta's deposition, the following colloquy occurred:
Q. When did you first become aware that someone was claiming that tanks out on your property might have leaked?
A. The best I can recollect is when the tanks were removed.
Q. Do you remember when that was?
A. Let's see. I'm sorry, I don't remember, sir.
Q. That's fine. Just so we're clear, when you say the tanks were removed, do you mean the gasoline tanks at the northwest corner that were removed by Mr. Patin. Is that what you're referring to?

*827 A. The gas tanks were dug out by Boss. I think it was Boss Construction.
Q. But that's when you first became aware that someone said there might have been some leakage; is that right?
A. As far as I'm concerned, sir.
Based primarily upon the Labbe brothers' testimony, Chevron moved for summary judgment on the prescription issue on June 15, 1993. Chevron contended that, because the Labbes admitted to actually knowing of the contamination on September 20, 1990 (the date the tanks were removed), it was entitled to judgment pursuant to La.C.C. art. 3493 because this suit was not filed until May 4, 1992, over one year after this knowledge was obtained. In other words, the motion for summary judgment was based upon the plea of prescription. LBM followed with a motion for partial summary judgment on July 7, 1993. Thereafter, on July 15, 1993, DEQ filed a motion for summary judgment, and Federated Mutual filed a motion for partial summary judgment. The trial court scheduled a hearing on the motions for summary judgment for August 16, 1993.
During the interim period, the parties took the depositions of Richard Goudeau of DEQ on July 22, 1993 and Andre Aucoin of Acadian Environmental on August 9, 1993. Neither of these depositions were filed into the record prior to or on the hearing date. In fact, the Goudeau deposition was filed on August 17, 1993 (the day after the hearing) and the Aucoin deposition was not filed until November 12, 1993.
On August 12, 1993, plaintiff filed a memorandum in opposition to summary judgment. In support of this opposition, plaintiff attached the sworn affidavit of Claude Labbe, which provided pertinently as follows:
* * * * * *
2) In September, 1990 certain used underground gasoline storage tanks were removed from the premises of Labbe Service Garage, Inc. Sometime subsequent tank lines were removed.
3) At the time that the tanks were removed, I appeared at the site. I did not visibly see any gasoline in the soil or water in the vicinity of the excavation nor was I privy to any testing that may have been done by DEQ at the site until after July, 1991.
4) Subsequent to June, 1991, I became aware that LBM Distributors, Inc. ("LBM") had been instructed by the Department of Environmental Quality to perform an environmental assessment with respect to the property of Labbe Service Garage, Inc.
5) Sometime after July, 1991, I obtained from DEQ a copy of the Environmental Site Assessment prepared by Acadian Environmental Services, Inc. This alerted me for the first time:
(a) That there were soil samples done showing that there was contamination of the soil which might exceed acceptable levels allowed by the Department of Environmental Quality. Prior to this time I was unaware of whether there was anything more than an odor of gasoline coming from the soil which was removed.
(b) That there were groundwater samples taken which showed that the groundwater was contaminated. Prior to this time I was unaware that the groundwater had been contaminated.
(c) That the source of the contamination was potentially leaking underground storage tanks and/or tank lines which had leaked prior to their removal. Prior to this time, I did not know where the contamination came from.
6) Prior to and up until the date suit was filed, I inquired of Chevron and LBM as to who owned the underground storage tanks, underground storage tank lines and related equipment. I was told by Chevron that all equipment was sold to LBM Distributors. I was told by LBM that Chevron or some other party still owned one underground storage tank. Thus, I did not know who owned what.
7) Prior to suit, I requested a copy of the bill of sale between Chevron, f/k/a Gulf Oil Corp. and LBM Distributors to determine what equipment was owned by whom. I was never given the bill of sale by Chevron or LBM until after suit was filed.
*828 In addition, plaintiff, in the memorandum, quoted from and summarized the deposition testimony of Aucoin, which had been taken three days before plaintiff filed its memorandum.[3] The content of Aucoin's testimony was generally favorable to plaintiff's position because Aucoin stated that merely smelling gasoline at a tank removal site does not sufficiently equate with knowledge of contamination beyond acceptable levels. Also, Aucoin explained that the overexcavation of soil which formerly surrounded the underground tanks does not necessarily indicate that the groundwater is contaminated.
The hearing was held as scheduled on August 16, 1993. The trial judge, on the record, stated preliminarily that he had not read plaintiff's memorandum in opposition to summary judgment before the hearing because he had not received the memorandum. He did, however, read the defense briefs in support of summary judgment. During the hearing, plaintiff's counsel referred to the content of Aucoin's deposition testimony, which was not at the time "of record", on eight separate occasions. At the conclusion of the hearing, the trial judge granted the four summary judgments. In so doing, he rendered the following oral reasons:
I can't see how the Labbes would not have had some knowledge in September of 1990 that there was some damage. They testified in their deposition that they suspected there was damage in September of 1990. Looking at Mr. Ester's [sic] deposition, Ester [sic] Labbe, on Page 16, he says that he first acquired knowledge to the best of his recollection when the tanks were removed. That was in September of 1990. And then Mr. Claude Labbe says September 20, 1990 is when he found out it was contaminated. Just seems to me that, you know, they may not have had the benefit of the scientific reports and the scientific study to determine the extent of the damage that they suffered, but I've got to believe that they had some knowledge that there was some damage, and by their own testimony, they've admitted that. I don't like summary judgments; I really, really don't. I think these people need to haveEverybody needs to testify or present their case, if you will. In this case, though, I don't think it would be fair to the defendants to
* * * * * *
All right, Gentlemen, I'm going to grant the Motion for Summary Judgment.
The trial court signed judgment dismissing plaintiff's claims against Chevron on October 8, 1993 and three separate judgments dismissing the other defendants on October 15, 1993. On October 22, 1993, plaintiff filed a motion for new trial wherein it argued that the close proximity in time of the Aucoin deposition to the hearing date precluded the trial court from reviewing the deposition transcript. Plaintiff primarily contended that, had the trial judge been able to consider the Aucoin deposition, he would not have rendered the summary judgments. Additionally, plaintiff urged that the judgments were contrary to the law and the evidence. The trial court conducted a hearing on plaintiff's motion on November 22, 1993 and rendered judgment denying the motion on April 22, 1994. This appeal ensued.

LAW AND OPINION
The standard upon which a summary judgment may be granted is statutorily embodied in La.C.C.P. art. 966(B), which provides, in pertinent part:
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. (Emphasis ours.)
Recently, in Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La. 7/5/94); 639 So.2d 730, the Supreme Court of Louisiana comprehensively reviewed the statutory and jurisprudential principles applicable to summary judgment cases. See Smith at pp. *829 750-752. Applying the precepts enunciated therein, we conclude, after a de novo review of the record, that there exists a genuine issue of material fact which precludes summary judgment on the issue of prescription. The material issue remaining in dispute is, simply stated, whether plaintiff had knowledge of the contamination sufficient to commence the running of the prescription more than one year prior to the May 4, 1992 filing of this action.
We note preliminarily that, although the procedural propriety of a motion for summary judgment based on a plea of prescription is not raised as an issue on appeal, this procedural device was first approved by this court in Duhon v. Boustany, 239 So.2d 180 (La.App. 3rd Cir.1970), appeal after remand, 323 So.2d 202 (La.App. 3rd Cir.1975), writ refused, 325 So.2d 794 (La.1976). Relying upon federal jurisprudence interpreting Federal Rule 56, the source provision of our La.C.C.P. art. 966, the court in Duhon held that summary judgment is available "where there is no dispute as to the facts governing these defenses (i.e., prescription) and the claim is barred as a matter of law". Id. at 182 (parenthetical inclusion ours). This holding was thereafter cited with approval by the First Circuit in two cases, Scott v. Butler Brothers Furniture Company of Baker, Inc., 315 So.2d 809 (La.App. 1st Cir. 1975) and Lasseigne v. Earl K. Long Memorial Hospital, 316 So.2d 761 (La.App. 1st Cir.1976). We therefore find that this particular procedural device is permissible.
The prescriptive period applicable to this case is "one year ... from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage". La.C.C. art. 3493. While it is permissible, the filing of a motion for summary judgment based on the plea of prescription practically subjects the movers to a higher burden of proof than if the movers had filed only the peremptory exception of prescription. The burden of proof on the movers for summary judgment in this case is particularly exacting in that they are required to prove, based solely on documentary evidence and without the benefit of testimony at a hearing, that there is no genuine material factual issue in dispute regarding the day upon which plaintiff acquired or should have acquired knowledge of the damage. On the other hand, pleading prescription alone subjects the exceptor to proving, by a preponderance of the evidence, that the plaintiff's claim has prescribed. Additionally, if on the face of the petition it appears that prescription has run, the burden shifts to the plaintiff to prove an interruption or suspension of the prescriptive period. Younger v. Marshall Industries, Inc., 618 So.2d 866 (La.1993). At a hearing on the exception of prescription, the parties are allowed to call witnesses to testify and the factfinder is allowed to weigh credibility. On summary judgment, this is prohibited. See Smith, supra.
In concluding that a material factual dispute exists, we analyze the issue with reference to the well settled jurisprudential interpretation of prescriptive statutes. Damage is sustained, within the meaning of prescription, only when it has manifested itself with sufficient certainty to support the accrual of a cause of action. Cole v. Celotex Corporation, 620 So.2d 1154 (La.1993). The damages suffered must at least be actual and appreciable in quality. Where a claimant has suffered some but not all damages, prescription runs from the day on which he suffered actual and appreciable damages even though he may thereafter realize more precise damages. Harvey v. Dixie Graphics, Inc., 593 So.2d 351 (La.1992). However, prescription will not commence at the earliest possible indication that plaintiff may have suffered some wrong. It will begin to run when plaintiff has a reasonable basis to pursue a claim against a specific defendant. Jordan v. Employee Transfer Corporation, 509 So.2d 420 (La.1987). Prescription should not be used to force a potential plaintiff who believes that he may have a cause of action to rush to the courthouse to file suit against all parties that may have caused the damage. Miley v. Consolidated Gravity Drainage District No. 1, 93-1321 (La.App. 1st Cir. 9/12/94); 642 So.2d 693.
The doctrine of contra non valentem agere nulla currit praescriptio prevents the running of liberative prescription where the cause of action is not known or reasonably *830 knowable by the plaintiff. Often, it is difficult to identify the precise time at which the claimant becomes aware of sufficient facts to begin the running of prescription. Cole, supra, at 1156-1157. The present case is analogous to the Colecase and other personal injury cases involving industrial, work-related pulmonary diseases contracted over long periods of continuous exposure.[4] In that class of cases, our courts have held that the fact that the claimant is told by a doctor only that he has a spot or scarring on his lungs that may be indicative of asbestosis or silicosis is not, in and of itself, sufficient to charge the claimant with actual or constructive knowledge that he suffers from an actionable medical condition, i.e., asbestosis or silicosis, which would thereby commence the running of prescription.
In the present case, plaintiff asserts that the fact that the underground storage tanks were removed and the surrounding soil was overexcavated is not sufficient to charge it with actual or constructive knowledge of an actionable condition, i.e., soil and groundwater contamination beyond acceptable regulatory limitations. Defendants, on the other hand, contend that plaintiff's admitted knowledge of the leaking as of September 20, 1990 and of the overexcavation indicate knowledge of certain damages sufficient to support a cause of action. According to the defendants, plaintiff should reasonably have known of its "actual and appreciable" damages, i.e., that its soil and groundwater were contaminated, by October or November of 1990 at the latest.
Based solely on the evidence properly before the trial court at the summary judgment hearing[5], it is clear that the material factual issue, the date upon which plaintiff acquired knowledge of the damage sufficient to commence the running of prescription, was still in dispute. In his deposition, Claude Labbe agreed that he first learned of the contamination on September 20, 1990. Esta Labbe also agreed with the statement that on that date, he "... first became aware that someone was claiming that tanks on your property might have leaked". The brothers did not say that they were aware as of September 20, 1990, of "contamination beyond acceptable levels", i.e., contamination (damage) which provides a reasonable basis to pursue a claim against a specific defendant. To the contrary, in his sworn affidavit, Claude stated that he did not become aware of contamination beyond acceptable levels (as per DEQ regulations) until sometime after July of 1991. The content of this affidavit was sufficient to create a disputed material fact issue. The aforementioned deposition testimony was equivocal at best and, in light of Claude's affidavit, was not sufficient to put to rest this material fact issue.
The issue of whether, in fact, suit was timely filed is not before this court. The defendants argue that plaintiff knew or should have known of the damage more than one year prior to filing suit. Plaintiff disputes defendants' assertion in a sworn affidavit. As stated in Smith, supra, at 751, summary judgment is seldom appropriate for determinations based on subjective facts such as knowledge. Clearly, plaintiff's level of knowledge is a material factone whose existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Penalber v. Blount, 550 So.2d 577, 583 (La.1989). We hold that the extent of plaintiff's knowledge is a material fact that, based upon the documentary evidence presented at the hearing and on file at the time, is still in dispute. Under these circumstances, summary judgment is inappropriate.
*831 For these reasons, the trial court's judgment is reversed. This case is remanded to the trial court for further proceedings in accordance with this opinion.
REVERSED AND REMANDED.
NOTES
[1] The appellate record, petitions and all of plaintiff's other pleadings are styled as "Labbe Service Garage, Inc., Claude Labbe, Esta Labbe, and Isadore Labbe versus ...". The three Labbe brothers are the principal owners of the corporation. However, the original and amended supplemental petition names only Labbe Service Garage, Inc. as a party plaintiff. Likewise, the motion for appeal also names this singular plaintiff as appellant. We consider that this suit was therefore filed only by the corporate body, Labbe Service Garage, Inc., and that Claude, Esta and Isadore Labbe are not parties-plaintiff in this suit.
[2] This pleading is in the record, but it has no indication of a filing date.
[3] The Aucoin deposition, as mentioned, had not yet been transcribed and was not "on file" at this time or at the time of the hearing.
[4] Cole involved asbestosis. See also Smith v. Mine Safety Appliances, 93-706 (La.App. 5th Cir. 1/25/94); 631 So.2d 1251, writs denied, 94-965 (La. 6/17/94); 638 So.2d 1094, 94-968 (La. 6/17/94); 638 So.2d 1095, 94-1012 (La. 6/17/94); 638 So.2d 1095, which involved a claimant's suit for work-related silicosis.
[5] As mentioned, the Aucoin and Goudeau depositions were not "on file" on the date of the hearing. Therefore, the trial court should not have considered the contents thereof. Despite the fact that plaintiff argued the favorable substance of the Aucoin deposition in memorandum and at the hearing, the trial court ruled against plaintiff. It is clear that any consideration given by the trial judge to this favorable yet not on file deposition was not sufficiently convincing to sway his judgment in favor of plaintiff.