236 So.2d 565 (1970)
Walter B. HUNTER and Betty H. Hunter,
v.
SISTERS OF CHARITY OF the INCANATE WORD, d/b/a T. E. Schumpert Memorial Hospital, et al.
No. 7993.
Court of Appeal of Louisiana, First Circuit.
May 25, 1970.
Rehearing Denied June 30, 1970.
*566 Sylvia Roberts, of Brumfield & Brumfield, Baton Rouge, for appellants.
Gerald L. Walter of Kantrow, Spaht, Weaver & Walter, Baton Rouge, for appellees.
Before LANDRY, SARTAIN and ELLIS, JJ.
LANDRY, Judge.
Plaintiffs appeal the judgment of the trial court sustaining defendant's exception of prescription and dismissing plaintiffs' action in tort for damages allegedly resulting from the negligent placing of Mrs. Hunter in bed while she was a patient in the Schumpert Memorial Hospital (Schumpert), located in Shreveport, Louisiana. We affirm the judgment of the court below.
It is undisputed that the incident giving rise to this litigation occurred on August 12, 1967, and that suit was not filed by plaintiffs until November 18, 1968. The salient issue on this appeal is when did Mrs. Hunter learn that the injuries allegedly received resulted from the reputedly negligent manner in which Schumpert's employees assisted her back into bed after she purportedly fell?
Named defendants in plaintiffs' initial action were (1) Schumpert; (2) Hartford Accident & Indemnity Company, Schumpert's insurer; (3) Dr. Wallace H. Brown, Mrs. Hunter's treating physician, and (4) United States Fidelity & Guaranty Company, insurer of Dr. Brown. The action against Dr. Brown and his insurer was dismissed on said defendants' motion for summary judgment and no appeal has been taken therefrom. Plaintiffs voluntarily dismissed their action against Schumpert, thus leaving Hartford the sole defendant herein.
In early August, 1967, Mrs. Hunter entered Schumpert for treatment for "black-outs" and numbness in her left arm and leg. She has no independent recollection of the incident which allegedly gave rise to her injuries. Her knowledge of the occurrence is based entirely on information imparted to her by Mrs. Pernie Smith, a nurse's aide employed by Schumpert, and Dorothy Peters, a patient who occupied an adjoining room.
Mrs. Hunter testified in effect that she was advised that she fainted while being assisted to the bathroom and was then picked up bodily by employees of the hospital and lifted into bed without the aid of a stretcher or other lifting or carrying devices. She thereafter experienced pain on her entire right side including her arm, shoulder, hand, thigh and leg. She could not move her right arm or leg, she experienced pain in her groin and her right leg, and her right forearm became swollen. She stated that prior to the incident, she had none of these symptoms. She related that she remained hospitalized for a considerable time during which she was treated and seen by Dr. Wallace A. Brown, Dr. T. A. Norris, Dr. Heinz K. Faludi, and Doctors Wilder and Mullin. On November 24, 1967, while on a week end pass from Schumpert, plaintiff was seen by Dr. Joe E. Carter, Chiropractor, Marionville, Missouri, who referred her to Dr. Leland Wetzel, Osteopath, who hospitalized plaintiff in Springfield, Missouri. On November 26, 1967, Dr. Wetzel informed plaintiff she was suffering from strained ligaments and tendons possibly caused by the manner in which she was assisted into bed while a patient at Schumpert on or about August 12, 1967. Plaintiff still complains of pain in her right hip and groin.
Mrs. Pernie Smith's testimony is that she is a nurses' aide at Schumpert. On or about August 12, 1967, she was assisting plaintiff to the bathroom when plaintiff suffered a fainting spell. She stated that plaintiff did not fall but was assisted to a sitting position on the floor and permitted *567 to lie on the floor until three other employees were summoned and plaintiff was raised bodily and placed in bed. Mrs. Smith explained that plaintiff was returned to bed by standard lifting procedure taught by the hospital, namely, one person at the patient's shoulders, another at the hips and the third at the patient's feet. Mrs. Smith did not recall advising plaintiff of the manner in which plaintiff was placed in bed. She did remember that plaintiff was unconscious at the time and that after the incident plaintiff made sundry complaints of pain. Mrs. Smith also explained that plaintiff repeatedly referred to her "fall" and each time Mrs. Smith corrected plaintiff by stating that plaintiff did not fall but was assisted to a sitting position on the floor.
On entering Schumpert plaintiff was treated by Dr. Wallace Brown, Surgeon. Dr. Brown testified that plaintiff was admitted for treatment of numbness in her left arm and left leg. Finding no objective symptoms to support plaintiff's complaints, Dr. Brown called Doctors Wilder and Lanford, Internists, in consultation. Eventually, Dr. Mullin, a psychiatrist, was also called in consultation. Dr. Mullin transferred plaintiff to the psychiatric floor and became her chief physician. Dr. Brown stated that he saw plaintiff on several occasions in the psychiatric ward and in each instance plaintiff complained of pain in the right hip, right leg, right shoulder, right arm and groin as the result of an alleged fall and being placed back in bed while a patient in the psychiatric ward. He noted that on more than one occasion, plaintiff complained of the manner in which she was assisted into bed. Dr. Brown was of the opinion that plaintiff being lifted into bed had no connection with her symptoms. He was of the further view that plaintiff's complaints resulted from tension and were psychosomatic in origin.
Dr. T. A. Norris, Orthopedic Surgeon, first examined plaintiff on August 18, 1967. She complained of pain in her right groin, right thigh and right hip. He related that plaintiff attributed her condition to a fall which she experienced a few days before and the manner in which she was returned to bed. He also stated that plaintiff "dwelled on the manner in which she was put in bed" and considered this incident the main source of her trouble and injuries. Dr. Norris found swelling in plaintiff's right ankle but did not find any other objective symptoms of injury. Dr. Norris believed the swelling noted was from disuse of plaintiff's leg. He also believed plaintiff was suffering from some genuine discomfort.
Plaintiff was seen by Dr. Heinz K. Faludi, Neurosurgeon, on October 7, 1967. Dr. Faludi noted the patient's complaints of blackout spells, headaches, weakness of the left extremities and pain in the right hip upon walking. He considered plaintiff's complaints bizarre and observed that plaintiff ascribed her difficulties to a fall in the hospital. Dr. Faludi expressed doubt that any stretching plaintiff may have experienced while being lifted into bed could have caused the problems encountered with plaintiff's right hip and leg.
It is conceded the one year prescription provided by LSA-R.C.C. Article 3536 is applicable herein. LSA-R.C.C. Article 3537 provides that the one year period stipulated in Article 3536, above, runs from the date on which the damages were sustained by plaintiff.
Generally the burden of proof rests upon the defendant pleading prescription as an affirmative defense. Succession of Thompson, 191 La. 480, 186 So. 1; Foster v. McLain, La.App., 198 So.2d 463; Ludlam v. International Paper Company, La.App., 139 So.2d 67. Where, however, plaintiff's petition shows on its face that the asserted claim has prescribed, PLAINTIFF must allege and prove facts sufficient to show a suspension or interruption of prescription sufficient to bring the action within the prescriptive period. Kennard v. Yazoo & M. V. R. Co., La.App., *568 190 So. 188. Lucas v. Commercial Union Insurance Company, La.App., 198 So.2d 560, announces the rule that where an action for personal injuries is brought more than one year subsequent to the commission of the tort, to avoid the effect of prescription, plaintiff must show lack of knowledge as to the injuries and circumstances which establish that the injuries were not sustained until some time following commission of the tort sued upon.
In the case at bar plaintiff concedes the alleged tort occurred on or about August 12, 1967, and that suit was not filed until November 18, 1968. Since plaintiffs' claim appears prescribed on its face, plaintiffs bear the burden of showing suspension or interruption of prescription. Kennard v. Yazzo & M. V. R. Co., above.
In essence plaintiffs contend prescription did not commence in this instance until Mrs. Hunter was made aware by medical opinion that the alleged negligent manner in which she was placed in bed could have caused the injuries of which she complains. It is plaintiffs' position that Mrs. Hunter was so advised for the first time on November 26, 1967. In this respect, plaintiff filed of record her personal affidavit accompanied by an unsworn report by Dr. Joe D. Carter which recites that Dr. Carter examined plaintiff on November 24, 1967. Dr. Carter's report also states his opinion to be that plaintiff's trouble with her right shoulder and hip arise from the stretching of plaintiff's muscles and ligaments when plaintiff was placed bodily in bed on August 12, 1967. We cannot take cognizance of either plaintiff's unilateral affidavit of Dr. Carter's unsworn report because while both were filed of record, neither has ever been formally offered or introduced in evidence. There does appear in evidence depositions by Mrs. Hunter, Mrs. Smith and Doctors Norris, Brown and Faludi. In her deposition, Mrs. Hunter merely stated she was first made aware that her injuries resulted from her being improperly handled as a patient by Dr. Carter in November, 1967. No evidence, medical or otherwise, was offered in corroboration thereof.
Plaintiffs maintain that Perrin v. Rodriguez, La.App., 153 So. 555, and R. J. Reynolds Tobacco Company v. Hudson, 5 Cir., 314 F.2d 776, are authority for the proposition that prescription does not run against a tort action until the injured plaintiff becomes aware that his injuries resulted from defendant's alleged negligence. Therefore, plaintiffs argue, since it was November 24, 1967, when Mrs. Hunter became aware that defendant's negligence was the cause of her injuries, prescription on her claim did not commence until that date.
In Perrin, above, plaintiff sued a dentist for failure to remove roots of teeth which were permitted to remain in plaintiff's jawbone following extraction of teeth and the fitting of a denture. In response to the patient's complaints of pain, the dentist altered the denture but the pain persisted. An oral surgeon consulted by the patient disclosed the presence of broken roots which were removed. Suit followed almost two years after the initial extractions but within one year of removal of the broken roots. Defendant's plea of prescription was rejected on the holding that prescription was suspended and did not commence running until the broken roots were discovered. It was held that prescription could not commence until plaintiff became aware of the injury and that it was attributable to defendant. In R. J. Reynolds Tobacco Company, above, plaintiff sued for damages resulting from cancer allegedly contracted as a result of smoking cigarettes. It appeared that plaintiff had suffered difficulty in breathing for two years prior to filing suit. It was held, however, that prescription did not commence to run until plaintiff was informed his condition was due to smoking.
In Lucas v. Commercial Union Insurance Company, La.App., 198 So.2d 560, we dealt at length with the problem here under consideration. It suffices to say that we there held that prescription does not *569 commence on a tort action until plaintiff is aware, as would be a reasonable person under similar circumstances, of both the tort and the damage resulting therefrom.
Neither Perrin nor R. J. Reynolds Tobacco Company, above, are factually similar to the case at hand. In both cited cases plaintiff was not initially aware of injury resulting from defendant's conduct. Here, the record clearly shows the contrary. Present plaintiff was fully aware of the incident which occurred August 12, 1967. She immediately began to complain of injuries therefrom.
Appellants argue that Mrs. Hunter does not attribute her injuries to the alleged fall but to the negligent manner in which she was placed in bed. Appellants then contend that since all doctors at Schumpert assured her the way in which she was placed in bed had nothing to do with her injuries, she had no way of knowing otherwise until she was eventually advised to the contrary by another doctor in November, 1967.
In the recent case of Cartwright v. Chrysler Corporation, La., 232 So.2d 285 (1970), the Supreme Court crystalized the jurisprudence on this subject matter as follows:
"The rule that prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring suit, applies only when such ignorance is not wilful and does not result from negligence, and the doctrine has been limited to cases where the debtor has concealed the fact of the obligation or has committed other acts which tend to hinder, impede or prevent the creditor from ascertaining knowledge of the existence of the debt. See, Ayres v. New York Life Ins. Co., [219 La. 945, 54 So. 2d 400] supra. Also, it is not necessary that the party have actual knowledge of the conditions as long as there is "constructive notice." Whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of every thing to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription."
The medical testimony of record does establish that the doctors who treated Mrs. Hunter doubted seriously that the manner in which she was placed in bed had anything to do with her complaints. From the beginning, however, plaintiff was fully aware of her injuries and attributed them to action on defendant's part of which she had knowledge. In this regard Dr. Brown testified that plaintiff attributed her injuries to a fall and the manner in which she was placed back in bed. Dr. Norris' testimony was that plaintiff dwelled on the manner in which she was placed in bed and assigned this event as the cause of her suffering. Mrs. Hunter had knowledge from the beginning both of the nature of her injuries and the express action of defendant to which she attributed her condition.
We find the above circumstances were sufficient to excite plaintiff's attention, put her on guard and call for an inquiry. Consequently plaintiff is charged with knowledge of all that diligent inquiry may have revealed.
Prescription on plaintiff's claim therefore commenced August 12, 1967. That medical experts questioned whether one aspect of the incident could have caused plaintiff's injuries is a matter of no moment under the circumstances. Plaintiff herein was fully aware of all operative factors from the commission of the alleged tort. The claim therefore prescribed in one year of the date of the alleged infliction of the injury.
The judgment of the trial court is affirmed at plaintiffs' cost.
Affirmed.