549 So.2d 914 (1989)
Jacqueline Dore LEYVA, Plaintiff-Appellant,
v.
Dr. Emile LAGA, Defendant-Appellee.
No. 88-676.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1989.
Orrill & Shearman, R. Ray Orrill, Jr., Robert F. Shearman, Vicki Williams, New Orleans, for plaintiff-appellant.
Deutsch, Kerrigan & Stiles, Jude Bourque, Robert E. Kerrigan, New Orleans, for defendant-appellee.
Before GUIDRY, LABORDE and KNOLL, JJ.
KNOLL, Judge.
Jacqueline Dore Leyva appeals the dismissal of her medical malpractice action against Dr. Emile Laga on a peremptory exception of prescription. The trial court found that Dr. Laga was an employee of Dr. J.B. Pecot, a qualified medical care provider under LSA-R.S. 40:1299.41, et seq., and that Leyva's action had not been brought within the requisite time period established by statute.
Leyva contends that the trial court committed reversible error by failing to recognize that her suit for damages against Dr. *915 Laga was timely under LSA-C.C. Art. 3462, LSA-R.S. 40:1299.41(G), and Fontenot v. Opelousas General Hospital, 503 So.2d 709 (La.App. 3rd Cir.1987), writ denied, 505 So.2d 62 (La.1987). We reverse.

FACTS
Leyva gave birth to a son on February 23, 1986, at Iberia General Hospital. Leyva is a deaf mute with poor vision. It was her doctor's recommendation that she have a bilateral tubal ligation. Immediately after the delivery, Dr. G.D. Sagrera performed a bilateral tubal ligation.
On or about February 25, 1986, Dr. Pecot, a pathologist, or one of his employees, one of whom is Dr. Laga, reported to the operating physician that the tissue specimen designated as left "fallopian tube" contained only fibroconnective and vascular tissue. Based on this information, Dr. Sagrera advised Leyva that he failed to ligate the left fallopian tube, and re-admitted her to Iberia General on April 4, 1986, for a second surgical tubal ligation. After performing an exploratory laparotomy, Dr. Sagrera determined that a proper ligation of the left fallopian tube had been performed during the first surgery.
Shortly after the second surgery, Leyva experienced pain in the lower right quadrant of the abdomen. She was diagnosed as having appendicitis, and an appendectomy was performed.
On August 20, 1987, Leyva sued Dr. Pecot, individually and as a professional medical corporation, Dr. Sagrera, and Iberia General in district court for personal injuries she received in connection with the various surgeries performed at Iberia General; the allegations against Dr. Pecot and Iberia General included claims that they were liable under the doctrine of respondeat superior. On August 21, 1987, Leyva amended her petition to add Dr. Laga as a defendant, alleging solidary liability with Dr. Pecot, Dr. Sagrera, and Iberia General.
On October 13, 1987, Leyva dismissed Dr. Pecot and his insurer, Louisiana Medical Mutual Insurance Company, without prejudice and "with the agreement by Dr. J.B. Pecot and Louisiana Medical Mutual Insurance Company (LAMMICO) to waive any exceptions of prescription with respect to Dr. J.B. Pecot resulting from this Motion to Dismiss, ..."
On October 22, 1987, and January 20, 1988, respectively, Leyva voluntarily dismissed Iberia General and Dr. Sagrera from the lawsuit, alleging that they were qualified health care providers under the terms of the medical malpractice act.
Dr. Laga filed a peremptory exception of no cause of action to Leyva's action against him, contending that Leyva neither alleged that Dr. Laga was not a qualified health care provider nor that the claim had been presented to a medical review panel. After conducting a hearing on Dr. Laga's exception, the trial court granted Laga's exception of no cause of action on February 1, 1988, and dismissed Leyva's lawsuit against him without prejudice.
On February 3, 1988, Leyva filed a new lawsuit against Dr. Laga, alleging that the Louisiana Commissioner of Insurance had advised her on August 6, 1987, that Dr. Laga was not a qualified health care provider. Dr. Laga interposed a peremptory exception of no cause of action, alleging that Leyva's lawsuit was filed after the one year prescriptive period had lapsed, and a dilatory exception of prematurity based on Leyva's failure to present her claim to a medical review panel before filing suit in the district court.
On April 14, 1988, the trial court treated Dr. Laga's exception of no cause of action as a peremptory exception of prescription, and dismissed Leyva's lawsuit with prejudice.
After Leyva's motion for a new trial was denied, she perfected this appeal.

PRELIMINARY OBSERVATIONS
In the briefs of Leyva and Dr. Laga numerous references are made to the following chronology:
February 16, 1987Leyva filed a claim with the Louisiana Insurance Commissioner against Dr. Sagrera, Dr. Pecot, and Iberia General.

*916 May 25, 1987The attorney for Dr. Pecot informed Leyva's attorney that Dr. Laga, not Dr. Pecot, read the pathology report.
July 20, 1987Dr. Pecot and his insurer were dismissed from the claim before the insurance commissioner.
August 6, 1987Leyva amended her claim before the insurance commissioner to add Dr. Laga as a co-defendant.
August 6, 1987The commissioner of insurance notified Leyva that Dr. Laga was not a qualified medical health care provider.
December 8, 1987The third and last physician was chosen for the medical review panel.
Despite the parties' references to these events, many of which are critical to our analysis, they were neither stipulated nor formally entered into evidence in the trial court. It is axiomatic that as an appellate court we are bound by what appears in the appellate record. State ex rel. Guste v. Thompson, 532 So.2d 524 (La.App. 1st Cir. 1988). Since none of these items were entered into evidence, we cannot consider them in our determination of this appeal.

PRESCRIPTION
Leyva contends that the trial court erred in finding that her claim against Dr. Laga was prescribed.
LSA-C.C.P. Art. 931 provides that, with the exception of a peremptory objection that the petition fails to state a cause of action, evidence may be introduced to support or controvert any of the peremptory objections pleaded, when the grounds thereof do not appear from the petition. In the present case, the appellate record does not show that anything was filed into evidence at the hearing of Dr. Laga's exception.
Where the plaintiff's cause of action has prescribed on the face of the petition, he bears the burden of proof to rebut the exception of prescription. State ex rel. Guste, supra.
In Monceaux v. Bernauer, 498 So.2d 1173, 1176 (La.App. 3rd Cir.1986), we stated:
"In Ledet v. Miller, 459 So.2d 202 (La. App. 3rd Cir.1984), writ denied, 463 So.2d 603 (La.1985), this court discussed the issue of knowledge insofar as it triggers the commencement of the one-year prescriptive period for malpractice actions as follows:
"Prescription does not begin to run against one who is ignorant of facts that would entitle him to bring an action as long as such ignorance is not willful and does not result from his neglect. Young v. Clement, 367 So.2d 828 (La.1979). However, the prescriptive period set out in 9:5628 will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge. Sartin v. St. Paul Fire and Marine Insurance Co., 359 So.2d 649 (La.App. 1st Cir.1978). Constructive knowledge is whatever is notice enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which inquiry may lead, and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription. Cartwright v. Chrysler Corporation, 255 La. 597, 232 So.2d 285 (1970)."
The mere apprehension by plaintiff that something is wrong is not sufficient to start prescription unless plaintiff knew or should have known by exercising reasonable diligence that his injury may have been caused by acts of malpractice. Gunter v. Plauche, 439 So.2d 437 (La.1983)."
In light of this jurisprudence, we have carefully reviewed Leyva's petition and find that on the allegations contained therein, we cannot conclude, on the face of the petition, that her action has prescribed. Leyva's petition basically chronicles the facts, but there is no allegation that Dr. Sagrera, her treating physician, informed *917 her either that her second operation was not necessary or that the pathology report was incorrect. Thus, the burden was on Dr. Laga to prove the facts to support his objection of prescription. Trainer v. Aycock Welding Company, 421 So.2d 416 (La.App. 1st Cir.1982).
It is elementary that in order to determine if the prescriptive period has run, the moving party must establish, by either actual or constructive knowledge of the injured party, when the prescriptive period began.
In the case sub judice, although most of the facts surrounding Leyva's surgeries are delineated in her petition, the record is void of proof of the date on which prescription began to run. In the absence of such evidence, we find that the trial court erred in dismissing Leyva's action on a peremptory exception of prescription.
For the foregoing reasons, the judgment of the trial court is reversed and set aside. This case is remanded to the trial court for further proceedings, with right being reserved to the defendant to reurge his exception of prescription. Costs of the trial court and this appeal are assessed to Dr. Laga.
REVERSED AND REMANDED.