590 So.2d 1291 (1991)
Dr. Mathew ABRAMS, Jr.
v.
Fannie HERBERT.
No. 90 CA 1704.
Court of Appeal of Louisiana, First Circuit.
November 22, 1991.
*1293 Mark E. Stipe, Baton Rouge, for plaintiff-appellee Dr. Mathew Abrams.
Oliver W. Williams, Baton Rouge, for defendant-appellant Fannie Herbert.
Before WATKINS, CARTER and FOIL, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment sustaining a peremptory exception raising the objection of prescription and dismissing with prejudice a proceeding before the Medical Review Panel.[1]

BACKGROUND
On July 20, 1989, Fannie Herbert filed a complaint with the Commissioner of Insurance alleging that on October 3, 1986, Dr. Mathew Abrams, Jr. negligently performed tubal ligation surgery on her.[2] According to plaintiff's complaint, she discovered that she was pregnant on about May 7, 1987, and she subsequently delivered a child by cesarean section on January 28, 1988.[3] Plaintiff's complaint also alleged that a doctor assisting Dr. Abrams in the delivery informed her that "one of the tubes had a hole in it, which caused the pregnancy and was allegedly repaired [at the time of delivery]." Plaintiff's complaint further alleged that on January 8, 1989, she was rushed to Woman's Hospital because she was experiencing excruciating pain in the stomach area. Plaintiff alleged that, at Woman's Hospital, she was diagnosed as having an infection of the "tubes." Plaintiff attributed the infection to the October 3, 1986 initial tubal ligation surgery and the subsequent repair of her tubes on January 28, 1988.
In response to plaintiff's complaint, pursuant to LSA-R.S. 40:1299.47(B)(2),[4] Dr. Abrams filed a peremptory exception raising the objection of prescription under the provisions of LSA-R.S. 9:5628[5] with the Nineteenth Judicial District Court, Parish of East Baton Rouge. In the peremptory exception, Dr. Abrams alleges that he last treated plaintiff in January of 1988, the month her child was born, and that plaintiff failed to keep a scheduled appointment on *1294 May 3, 1988. At trial on the peremptory exception raising the objection of prescription, Dr. Abrams submitted, without objection, an affidavit stating that on February 18, 1988, within one month of the birth of her child, plaintiff told him that she and her husband were going forth with a law suit against the doctor. Uncontroverted evidence showed that shortly after plaintiff threatened to sue, Dr. Abrams sent plaintiff's medical records to her attorney upon his request. However, no suit was actually filed until more than a year after plaintiff informed the doctor of her intent to sue.
The pertinent events, as derived from the evidence and pleadings, may be chronologically summarized as follows:
October 3, 1986Tubal ligation surgery is performed by Dr. Abrams on Herbert.
May 7, 1987Herbert discovers that she is pregnant.
November 3, 1987Herbert executes a document authorizing release of her medical records to her attorney.
January 28, 1988Dr. Abrams delivers Herbert's child by cesarean. Herbert is informed that her pregnancy was "caused" by a hole in her tube. The hole is repaired.
February 18, 1988Herbert threatens to sue Dr. Abrams.
March 31, 1988Herbert's attorney requests Herbert's medical records from Dr. Abrams.
May 3, 1988Herbert fails to keep a scheduled appointment with Dr. Abrams.
June 21, 1988Dr. Abrams sends Herbert's medical records to her attorney.
January 8, 1989Herbert is rushed to the hospital suffering with infection of the "tubes."
July 20, 1989Herbert files a complaint with the medical malpractice committee.
After a hearing on the matter, the trial judge, without making a ruling as to the exact date upon which prescription accrued, found that the plaintiff's action had prescribed. From this adverse ruling, plaintiff appealed assigning the following errors:
I. The trial court erred in failing to determine that the damages and injuries sustained by the appellant were of a continuing nature and that they ceased on January 8, 1989.
II. The trial court erred in granting appellee's exception of prescription.

CONTINUING TORT
Plaintiff alleges that Dr. Abrams' actions, commencing with the October 3, 1986 tubal ligation, constituted a continuing tort; therefore, the running of prescription did not commence until plaintiff was eventually properly treated in January of 1989 for an infection she attributes to Dr. Abrams' actions.
The Louisiana Supreme Court discussed the continuing tort concept in South Central Bell Telephone Company v. Texaco, Inc., 418 So.2d 531, 533 (La.1982), stating that "[w]hen the tortious conduct and resulting damages continue, prescription does not begin until the conduct causing the damage is abated." In South Central Bell Telephone Company v. Texaco, Inc., a continuous gasoline leak constituted continuing tortious conduct causing continuous damage. Continuous damage alone is insufficient to give rise to a continuing tort. In Crawford v. Howard, 539 So.2d 735, 736 (La.App. 3rd Cir.), writs denied, 541 So.2d 840 (La.1989), our brethren of the Third Circuit found that continuing pain and discomfort arising from dental treatment did not constitute a continuing tort when the plaintiff failed to show continuing conduct on the part of the doctor.
In order to allege a continuing tort, a plaintiff must allege both continuous action and continuous damage. In the case sub judice, plaintiff alleged that Dr. Abrams committed individual acts, not continuous conduct. She alleged negligence on the separate occasions of the tubal ligation operation and the repair surgery. Plaintiff failed to allege constant conduct on the part of the doctor. Since we find that plaintiff failed to allege continuous action on the part of the doctor, it is unnecessary to assess whether she described continuous *1295 damage, the other required allegation for a continuing tort.
We note that, in certain circumstances, a doctor's continuing professional relationship with his patient might give rise to the suspension or interruption of prescription. Trainor v. Young, 561 So.2d 722, 726-27 (La.App. 2nd Cir.), writs denied, 567 So.2d 1124, 1125 (La.1990). However, interruption of prescription by the continued existence of a professional relationship is not based on continuous action constituting a continuing tort, but is based on the premise that the professional relationship is likely to hinder the patient's inclination to sue. See Succession of Smith v. Kavanaugh, Pierson and Talley, 565 So.2d 990, 995 (La.App. 1st Cir.), writ denied, 567 So.2d 1125 (La.1990).
We therefore agree with the trial court that the plaintiff's allegations did not describe a continuing tort.

PRESCRIPTION
Having found that plaintiff failed to allege a continuing tort, we must determine whether or not plaintiff's claims against the doctor based on his individual acts have prescribed.
The medical malpractice prescription provision, LSA-R.S. 9:5628, provides a one-year prescriptive period which cannot be suspended beyond three years. All of the alleged events pertinent to the instant case occurred within the three-year period between October 3, 1986, the date of the initial tubal ligation surgery, and July 20, 1989, the date Hebert's complaint was filed.
The burden of proof generally rests upon the party pleading prescription as an affirmative defense. Where, however, plaintiff's petition shows on its face that the asserted claim has prescribed, plaintiff bears the burden of proving interruption or suspension of prescription sufficient to bring the action within the prescriptive period. Hunter v. Sisters of Charity of Incarnate Word, 236 So.2d 565, 567 (La.App. 1st Cir.1970). Whether a pleading has prescribed on its face must be determined, in part, according to the date plaintiff alleged knowledge of the tortious act, the damage, and the causal relation between the wrongful act and the damage. Chaney v. State Department of Health and Human Resources, 432 So.2d 256, 259-60 (La.1983). The burden of proof does not shift to plaintiff unless the face of her petition reveals that she had knowledge of the damage and its cause at a time beyond the prescriptive period. Leyva v. Laga, 549 So.2d 914, 916-17 (La.App. 3rd Cir.1989).
Generally, prescription does not commence to run until plaintiff has "actual or constructive knowledge of the tortious act, the damage and the causal relation between the tortious act and the damage". Sartin v. St. Paul Fire and Marine Insurance Co., 359 So.2d 649, 651 (La.App. 1st Cir.1978), quoting Duhon v. Saloom, 323 So.2d 202, 204 (La.App. 3rd Cir.1975), writ denied, 325 So.2d 794 (La.1976). When a potential claimant is unaware of his damage or its cause, or otherwise prevented from acting, the doctrine of contra non valentem agere nulla currit praescriptio[6] may be invoked. See Harlan v. Roberts, 565 So.2d 482, 485-486 (La.App. 2nd Cir.), writ denied, 567 So.2d 1126 (La.1990) and cases cited therein.
Mere notice of a wrongful act is insufficient to commence the running of prescription. The potential claimant must be able to state a cause of action consisting of both wrongful act and resultant damages. Rayne State Bank and Trust Company v. National Union Fire Insurance Company, 483 So.2d 987, 995 (La.1986).
Guidance for determining whether a plaintiff had knowledge of his potential claim at a particular time is provided in Harlan v. Roberts, 565 So.2d at 486:
[T]he focus is on the reasonableness of the inaction by plaintiff. The rule is whether the cause of action was known or reasonably "knowable" by plaintiff. *1296 Prescription does not run only as long as it is reasonable for plaintiff not to recognize that the condition may be related to treatment. When a plaintiff has knowledge of facts strongly suggestive that the untoward condition or result may be the result of improper treatment and there is no effort by the health care providers to mislead or cover up information which is available to plaintiff through inquiry or professional medical or legal advice, then the facts and cause of action are reasonably knowable to plaintiff. Inaction by plaintiff for more than one year under these circumstances is not reasonable.
Whether a particular plaintiff knew of the existence of his medical malpractice cause of action at a particular time must be decided based on the particular facts of the case. It is not necessary that an attorney or a physician inform the plaintiff of the existence of a medical malpractice cause of action. A court may find that a plaintiff had knowledge of the existence medical malpractice cause of action based on the plaintiff's background, intelligence, response to symptoms, and other relevant circumstances. Harlan v. Roberts, 565 So.2d at 486-87.
In the instant case, the two adverse results, pregnancy and infection, which allegedly resulted from the negligent tubal ligation surgery, must be examined separately, in light of the above principles, in order to determine whether one or both claims have prescribed. Chaney v. State Department of Health and Human Resources, 432 So.2d 256 (La.1983).

Claim based on Pregnancy
Assuming arguendo that prescription commenced to run on the latest possible date discernable from the record, we must conclude that plaintiff's claim arising from her pregnancy has prescribed.
Plaintiff's pleading states she was aware that she was pregnant on May 7, 1987. However, a plaintiff's knowledge of unsuccessful surgery is not necessarily indicative of the plaintiff's knowledge of the existence of a cause of action. Unsuccessful surgery is not per se an indication of malpractice. Gunter v. Plauche, 439 So.2d 437, 439 (La.1983).
According to her pleading, plaintiff was told on January 28, 1988, that a hole in her tube resulted in her pregnancy. The unrefuted affidavit executed by Dr. Abrams reveals that plaintiff told Dr. Abrams on February 18, 1988, that she and her husband were going forth with a lawsuit. Dr. Abrams introduced, without objection, an authorization form for the release of medical records, apparently executed by plaintiff on November 3, 1987, and a letter from plaintiff's attorney dated March 31, 1988, requesting plaintiff's medical records from Dr. Abrams. An employee of Dr. Abrams testified that she mailed the requested medical records to plaintiff's attorney on June 21, 1988.
In Harlan v. Roberts, 565 So.2d at 486-87, the court noted that plaintiff's demands for settlement, contact with a consumer hotline, and threat to seek legal advice indicated the plaintiff's knowledge of the existence of a cause of action in medical malpractice. In the instant case, the evidence of plaintiff's threat to the doctor, followed by her attorney's request for medical records from the doctor, indicates that plaintiff had sufficient knowledge of her claim to commence the running of prescription by February 18, 1988, the day she threatened to sue. However, assuming arguendo, that plaintiff remained ignorant of her claim arising from her pregnancy until her attorney received the medical records mailed June, 21, 1988, plaintiff's claim filed July 20, 1989, has prescribed.[7]
*1297 We have previously determined that plaintiff's argument that prescription was suspended during the duration of a continuing tort is without merit. Because the latest possible date upon which prescription could have begun to accrue on plaintiff's complaint arising from her pregnancy was more than one year before July 20, 1989, the date her complaint was filed, her claim has prescribed.

Claim Based on Infection
Plaintiff also alleges that on January 8, 1989, she was rushed to a hospital, suffering with an infection of the "tubes" which she attributes to both the initial tubal ligation surgery and the subsequent remedial tubal surgery performed the day her child was born. The face of plaintiff's pleading does not indicate that before January 8, 1989, she suffered any symptoms of the infection or had reason to believe that an infection had been caused by the surgical procedures.
Prescription runs not from the date of the wrongful act, but from the damage. Rayne State Bank & Trust Company v. National Union Fire Insurance, 483 So.2d at 995. Until plaintiff has actual or constructive knowledge of the causal relation between the tortious acts and the damage, prescription does not being to run. Sartin v. St. Paul Fire and Marine Insurance Co., 359 So.2d at 651.
In Leyva v. Laga, 549 So.2d at 916-17, the face of plaintiff's petition did not reveal when plaintiff learned of her cause of action. The court held that since the action had not prescribed on its face, the burden of proof was on the defendant doctor to support his objection of prescription.
In the instant case, the face of plaintiff's pleading indicates that she had knowledge of her cause of action arising out of the infection by January 8, 1989, but not prior to that date. Because January 8, 1989, is within one year of July 20, 1989, the date plaintiff's complaint was filed, and within three years of October 3, 1986, the date of the initial tubal ligation surgery, plaintiff's claim based on the infection is not prescribed on its face. As plaintiff's petition has not prescribed on its face, it was Dr. Abrams' burden to prove the claim prescribed. Hunter v. Sisters of Charity of Incarnate Word, 236 So.2d at 567. See Leyva v. Laga, 549 So.2d at 916-17.
There is no evidence in the record suggesting that before she was rushed to the hospital and diagnosed with tubal complications on January 8, 1989, plaintiff had "actual or constructive knowledge of the tortious act, the damage and the causal relation between the tortious act and the damage" sufficient to commence the running of prescription. Sartin v. St. Paul Fire and Marine Insurance Co., 359 So.2d at 651, quoting Duhon v. Saloom, 323 So.2d at 204. We find that the plaintiff's claim, alleging that negligent tubal ligation surgery and subsequent repair surgery caused her infection in January of 1989, has not prescribed. See Sartin v. St. Paul Fire and Marine Insurance Co., 359 So.2d 649; Chaney v. State Department of Health and Human Resources, 432 So.2d at 256.

CONCLUSION
For the above and foregoing reasons, the judgment of the trial court sustaining defendant's peremptory exception raising the objection of prescription is affirmed insofar as it relates to plaintiff's cause of action for the alleged negligent tubal ligation resulting in her pregnancy. The judgment of the trial court sustaining the peremptory exception raising the objection of prescription and dismissing plaintiff's cause of action is reversed insofar as it relates to plaintiff's cause of action for damages suffered from infection allegedly resulting from the tubal ligation and subsequent repair surgery. The case is remanded to the trial court for proceedings consistent with *1298 the views expressed herein, with costs of this appeal to await final disposition of this case.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] The original judgment was signed June 19, 1990. An amended judgment which, unlike the original judgment does not assess costs to the plaintiff, was signed August 15, 1990, after this appeal was perfected by the appellant. No explanation is given for the signing of the second judgment. However, the instant appeal was perfected within sixty days of the signing of the original judgment.
[2] Tubal ligation is defined as "sterilization of the female by constricting the uterine tubes by means of ligature." Dorland's Illustrated Medical Dictionary (27th ed. 1988).
[3] We refer to Herbert as plaintiff and Abrams as defendant because the initial action was brought by Herbert against Abrams.
[4] LSA-R.S. 40:1299.47(B)(2) provides:

(2)(a) A health care provider, against whom a claim has been filed under the provisions of this Part, may raise any exception or defenses available pursuant to R.S. 9:5628 in a court of competent jurisdiction and proper venue at any time without need for completion of the review process by the medical review panel.
(b) If the court finds that the claim had prescribed or otherwise was perempted prior to being filed, the panel, if established, shall be dissolved.
[5] At the time Dr. Abrams' petition was filed, October 4, 1989, LSA-R.S. 9:5628 provided:

A. No action for damages for injury or death against any physician, chiropractor, dentist, psychologist, or hospital duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
Amendments to LSA-R.S. 9:5628 enacted after Dr. Abrams' petition was filed have no bearing on the instant case.
[6] "Prescription does not run against a party unable to act." (As translated in Chaney v. State Department of Health and Human Resources, 432 So.2d 256, 258 n. 4 (La.1983).
[7] As noted above, some courts have held that, in certain circumstances, it is unreasonable to require a patient to sue his treating physician while the physician-patient relationship continues. Trainor v. Young, 561 So.2d 722, 726-27 (La.App. 2nd Cir.), writs denied, 567 So.2d 1124, 1125 (La.1990). The "continuous representation" rule used to suspend the running of prescription, common in the legal malpractice setting, is based not on the continuing actions of the professional involved, but is actually a form of contra non valentem. See Succession of Smith v. Kavanaugh, Pierson and Talley, 565 So.2d 990, 995 (La.App. 1st Cir.), writ denied, 567 So.2d 1125 (La.1990). Dr. Abrams stated in his pleading that he last treated Herbert on January of 1988, and that she did not keep her May 3, 1988 appointment. Assuming arguendo that the "continuous representation" rule is applicable, even if Dr. Abrams continued to act as Herbert's treating physician until May 3, 1988, Herbert's claim filed July 20, 1989, would nevertheless be untimely. See Bolton v. New England Insurance Company, 542 So.2d 135, 138 (La.App. 1st Cir.), writ denied 546 So.2d 1214 (La.1989).