708 So.2d 487 (1998)
Louis WANG and Ana Wang, Tutor of his Minor Daughter, Jennifer Christiana Wang
v.
Thad BROUSSARD, M.D. and Stewart T. Ramey, M.D.
No. 96 CA 2719.
Court of Appeal of Louisiana, First Circuit.
February 20, 1998.
Rehearing Denied April 2, 1998.
*488 Robert W. Stratton, Baton Rouge, for Plaintiff-Appellant Louis Wang, Ana Wang, and Louis Wang, Tutor of his Minor Daughter, Jennifer Christiana Wang.
Myron Walker, Baton Rouge, for Defendant-Appellee Stewart T. Ramey, M.D.
Frank A. Fertitta, Baton Rouge, for Defendant-Appellee Thad Broussard, M.D.
Mary H. Thompson, Baton Rouge, for Defendant-Appellee Woman's Hospital Foundation.
Before LOTTINGER, C.J., and SHORTESS and FOGG, JJ.
LOTTINGER, Chief Judge.
This is an action for medical malpractice wherein plaintiffs allege that defendant physicians failed to timely diagnose that plaintiffs' infant daughter suffered from bilateral *489 congenital hip dislocations. The trial court granted defendants' peremptory exception raising the objection of prescription, and plaintiffs now appeal.

FACTS
Jennifer Christiana Wang was delivered by caesarian section on February 23, 1991. Upon examining Jennifer on that date, her pediatrician, Dr. Stewart Ramey, noted what he believed were bilateral congenital hip dislocations, and referred the child to an orthopedist, Dr. Thad Broussard, for further evaluation and treatment. Following a telephone consultation with Dr. Broussard regarding the child's condition, Dr. Ramey ordered that she be placed in triple diapers until she could be seen by Dr. Broussard.
Dr. Broussard saw the child for the first time in his office on March 1, 1991. Following a physical and x-ray examination on that date, Dr. Broussard concluded that she had a subluxation rather than a dislocation of the hip, and prescribed that plaintiffs continue to use triple diapers for a period of two weeks. Dr. Broussard examined the child again during a follow-up visit on March 11, 1991, and reduced her from three diapers to two. The child was scheduled to return to Dr. Broussard for a second follow-up visit on March 25, 1991; however, this appointment was later canceled by the child's mother, plaintiff Ana Wang, who never returned to see Dr. Broussard. Plaintiffs did, however, continue to seek regular pediatric care from Dr. Ramey.
Dr. Ramey saw the child on March 27, 1991, for her one month pediatric checkup, but was evidently unaware that the child had not been released from the care of Dr. Broussard. On that occasion, he noted that the child's hips were "okay." On subsequent visits to Dr. Ramey, there is no record that plaintiffs expressed concern about the child's hips.
Dr. Ramey's transcribed office notes reflect that the following year, on April 23, 1992, the child was seen by Dr. Ramey with complaints of fever, coughing, and congestion. There was also a complaint of her left leg appearing to drag. At that time, the child was fourteen months old and just beginning to walk. Dr. Ramey initially suggested that the child return to Dr. Broussard for evaluation; however, when Mrs. Wang indicated she did not wish to return to Dr. Broussard, Dr. Ramey referred her to another orthopedist, Dr. Ronald Sylvest. He provided her with Dr. Sylvest's name and telephone number on a piece of paper. When the child returned to Dr. Ramey for a recheck ten days later on May 4, 1992, Dr. Ramey reiterated his recommendation that Mrs. Wang make an appointment with Dr. Sylvest, and further suggested that she advise him after she made the appointment, so that he could call Dr. Sylvest and preface her visit.
During a subsequent unrelated visit on either May 20, 1992, or June 1, 1992, Dr. Ramey again recommended that Mrs. Wang bring the child to Dr. Sylvest for evaluation and treatment. Inexplicably, the Wangs never took the child to Dr. Sylvest. Months later, during an office visit on September 3, 1992, Dr. Ramey referred the Wangs to a third orthopedist, Dr. Brent Bankston. Once again, the parents declined to follow Dr. Ramey's advice.
Mrs. Wang ultimately sought treatment for the child from Dr. Roberto Bruno, an orthopedist, while on a visit to her native country, Brazil, in October of 1992. Mrs. Wang claims to have been astounded when Dr. Bruno advised her that her daughter had dislocated hips and would require surgery. Upon learning the news of his daughter's condition, Mr. Wang telephoned Dr. Ramey, who later referred the child to Dr. James Bennett, a pediatric orthopedist at Children's Hospital in New Orleans, following her return to the United States on December 5, 1992.
Plaintiffs initially filed their complaint with the Louisiana Patient's Compensation Fund on September 2, 1993, approximately eighteen months after her last visit to Dr. Broussard. The complaint alleged acts of malpractice and substandard treatment by Dr. Thad Broussard and Dr. Stewart Ramey following the child's delivery at Woman's Hospital on February 23, 1991. A medical review panel was assembled to review the plaintiffs' allegations, and on January 25, 1995, the panel *490 concluded that there was not a breach of the standard of care on the part of either Dr. Ramey or Dr. Broussard.
On March 14, 1995, plaintiffs filed the instant lawsuit against Drs. Broussard and Ramey, seeking damages for alleged malpractice. Thereafter, on April 26, 1995, plaintiffs filed an amending and supplemental petition naming Woman's Hospital Foundation, d/b/a Woman's Hospital, as an additional defendant. On May 19, 1995, the Hospital filed a dilatory exception raising the objection of prematurity asserting that plaintiffs were required, under the provisions of the Louisiana Malpractice Act, La. R.S. 40:1299.41, et seq., to present their malpractice claims against the hospital to a medical review panel prior to filing suit. On June 26, 1995, the trial court maintained the exception, and plaintiffs' claims against Woman's Hospital were dismissed[1].
Both Dr. Broussard and Dr. Ramey filed exceptions raising the objection of prescription asserting that the suit was prescribed in accordance with La. R.S. 9:5628, because it was filed more than one year after the date upon which plaintiffs were put on notice of the alleged malpractice. The exceptions raising the objection of prescription were heard and granted by the district court on January 22, 1996.[2] It is from this judgment that the plaintiffs appeal and to which Drs. Ramey and Broussard respond.

ISSUES ON APPEAL
On appeal, the plaintiffs present the following issues for our consideration:
1.) Did the trial court err in granting defendants' exception based upon prescription where plaintiffs did not have knowledge of their potential malpractice claim until they were advised by a Brazilian physician on October 28, 1992?
2.) Did the defendants fail in their burden to establish that plaintiffs' claim had prescribed?
3.) Was prescription suspended by the continuing professional relationship between the patient and the physician?

DISCUSSION
Generally, a medical malpractice action must be filed within one year of the alleged act, omission or neglect or within one year from the date of discovery of the alleged act, omission or neglect, but in all cases, no later than three years from the date of the alleged act, omission or neglect. La. R.S. 9:5628(A); Chandler v. Highland Clinic, 28,204, p. 3 (La.App. 2nd Cir. 4/3/96); 671 So.2d 1271, 1273.
The burden of proof generally rests upon the party pleading prescription as an affirmative defense; however, where the plaintiff's petition shows on its face that the asserted claim has prescribed, the plaintiff bears the burden of proving that prescription has been sufficiently interrupted or suspended so as to bring the action within the prescriptive period. Abrams v. Herbert, 590 So.2d 1291, 1295 (La.App. 1st Cir.1991); Hunter v. Sisters of Charity of Incarnate Word, 236 So.2d 565, 567 (La.App. 1st Cir. 1970). Whether a pleading has prescribed on its face must be determined, in part, according to the date plaintiff alleged knowledge of the tortious act, the damage, and the causal relation between the wrongful act and the damage. Abrams v. Herbert, 590 So.2d at 1295. The burden of proof does not shift to the plaintiff unless the face of the petition reveals that the plaintiff had knowledge of the damage and its cause at a time beyond the prescriptive period. Id.
In the case sub judice, the plaintiffs allege in their petition that they did not have knowledge that their daughter suffered from bilateral hip dislocations until she was diagnosed *491 by Dr. Bruno in Brazil on October 28, 1992. Over ten months later, on September 2, 1993, plaintiffs filed their request for a medical review panel. Plaintiffs' request for review was within one year of Dr. Bruno's diagnosis, but nearly eighteen months following her last visit to Dr. Broussard. Inasmuch as plaintiffs' petition was not prescribed on its face, the burden of proof clearly rested with defendants to prove that plaintiffs' claim had prescribed.
Our Louisiana Supreme Court has held that mere notice of a wrongful act is insufficient to commence the running of prescription. The potential claimant must be able to state a cause of action consisting of both wrongful act and resultant damages. Because the damage must necessarily occur after the wrongful act, prescription runs from that point and not from the date of the wrongful act. Rayne State Bank and Trust Company v. National Union Fire Insurance Company, 483 So.2d 987, 995 (La.1986); Abrams v. Herbert, 590 So.2d at 1295.
In Abrams v. Herbert, 590 So.2d at 1295, we looked to Harlan v. Roberts, 565 So.2d 482 (La.App. 2nd Cir.), writ denied, 567 So.2d 1126 (La.1990), for guidance in determining whether a plaintiff had knowledge of his potential claim at a particular time. In Harlan v. Roberts, 565 So.2d at 486, the Second Circuit opined:
[T]he focus is on the reasonableness of the inaction by plaintiff. The rule is whether the cause of action was known or reasonably "knowable" by plaintiff. Prescription does not run only as long as it is reasonable for plaintiff not to recognize that the condition may be related to treatment. When a plaintiff has knowledge of facts strongly suggestive that the untoward condition or result may be the result of improper treatment and there is no effort by the health care providers to mislead or cover up information which is available to plaintiff through inquiry or professional medical or legal advice, then the facts and cause of action are reasonably knowable to plaintiff. Inaction by plaintiff for more than one year under these circumstances is not reasonable.
Whether a particular plaintiff knew of the existence of his medical malpractice cause of action at a particular time must be decided based on the particular facts of the case. It is not necessary that an attorney or physician inform the plaintiff of the existence of a medical malpractice cause of action. A court may find that a plaintiff had knowledge of the existence of a medical malpractice cause of action based upon the plaintiff's background, intelligence, response to symptoms, and other relevant circumstances. Abrams v. Herbert, 590 So.2d at 1296; Harlan v. Roberts, 565 So.2d at 486; see also Chandler v. Highland Clinic, 28,204, p. 3 (La.App. 2nd Cir.1996); 671 So.2d 1271, 1273.
Under the facts presented by the case sub judice, it is undisputed that Dr. Ramey diagnosed Jennifer as having what he believed were bilateral congenital hip dislocations shortly after her birth. As confirmation of this fact was outside his area of expertise, Dr. Ramey referred plaintiffs to an orthopedist, Dr. Broussard. Dr. Broussard's subsequent evaluation of the child offered a different diagnosis; however, plaintiffs did not complete the course of treatment recommended by Dr. Broussard. Nevertheless, plaintiffs did continue to see Dr. Ramey for treatment of unrelated matters.
A little over a year later, when plaintiffs observed that Jennifer appeared to drag her leg as she began to walk, plaintiffs expressed their concern to Dr. Ramey. Once again, Dr. Ramey referred plaintiffs to Dr. Broussard. When plaintiffs indicated they did not wish to return to Dr. Broussard, Dr. Ramey provided them with the name and telephone number of another orthopedist, Dr. Sylvest. Despite repeated inquiries by Dr. Ramey, plaintiffs failed to have the child seen by an orthopedist until six months later when Jennifer was seen by Dr. Bruno in Brazil.
Based upon the evidence before us regarding the child's history, we conclude that certainly by the time they saw Dr. Ramey on April 23, 1992, plaintiffs were reasonably alerted that they may have a cause of action, and should have thereafter sought further information concerning their daughter's condition. The plaintiffs' decision to postpone further investigation of their daughter's apparent *492 disability for six months, and to wait an additional ten months thereafter before filing their malpractice claim was unreasonable.[3]
The third and final issue raised by plaintiffs is that prescription was suspended by the continuing professional relationship between the plaintiffs and the child's pediatrician, Dr. Ramey. A review of Dr. Ramey's transcribed office notes indicates that following her return from Brazil, Dr. Ramey continued to treat the child for various illnesses until mere days before plaintiffs' filed their claim against him for malpractice on September 2, 1993.
As this court has previously noted in Abrams v. Herbert, 590 So.2d at 1295,
[I]n certain circumstances, a doctor's continuing professional relationship with his patient might give rise to the suspension or interruption of prescription. Trainor v. Young, 561 So.2d 722, 726-27 (La.App. 2nd Cir.), writs denied, 567 So.2d 1124, 1125 (La.1990). However, interruption of prescription by the continued existence of a professional relationship is not based on a continuous action constituting a continuing tort, but is based on the premise that the professional relationship is likely to hinder the patient's inclination to sue. See Succession of Smith v. Kavanaugh, Pierson and Talley, 565 So.2d 990, 995 (La.App. 1st Cir.), writ denied, 567 So.2d 1125 (La. 1990).
In Succession of Smith v. Kavanaugh, Pierson and Talley, 565 So.2d 990 (La.App. 1st Cir.), writ denied, 567 So.2d 1125 (La. 1990), a case involving allegations of legal malpractice, this court concluded that the "continuous representation" rule, like the "continuous treatment" rule asserted by plaintiffs herein, is actually a form of contra non valentem. Succession of Smith v. Kavanaugh, Pierson and Talley, 565 So.2d at 995. As we noted in our opinion in Succession of Smith, the issue of when the attorney-client relationship is considered terminated for purposes of the continuing representation rule has not been frequently addressed in Louisiana. For that reason, we, in Succession of Smith, borrowed language from a decision by the South Dakota Supreme Court, Schoenrock v. Tappe, 419 N.W.2d 197, 201 (S.D. 1988), and adopted the views expressed therein that the continuous representation rule should apply only "where the professional's involvement after the alleged malpractice is for the performance of the same or related services and is not merely continuity of a general professional relationship." Succession of Smith, 565 So.2d at 995. In determining exactly when the professional relationship terminated, we stated that "the entire relationship between attorney and client must be examined". Id.
As we have stated, our opinion in Succession of Smith, was restricted to cases involving legal malpractice; however, we do not see why the same rule could not be extended to actions for medical malpractice. In their brief to this court, plaintiffs allege that their continuing professional relationship with Dr. Ramey gave rise to "an interruption of prescription because plaintiffs would not have continued the relationship had they suspected malpractice sooner." Plaintiffs reliance on this allegation is clearly disingenuous inasmuch as it is evident that Dr. Ramey's practice was limited solely to pediatrics, and that he referred patients to other physicians when the nature of their problems lay outside the scope of his practice. For reasons known only to them, plaintiffs repeatedly chose to ignore Dr. Ramey's advice to have the child evaluated by an orthopedist. Plaintiffs cannot now assert that continued pediatric treatment with Dr. Ramey precluded them from timely asserting their malpractice claims. This assignment of error is without merit.

CONCLUSION
For the reasons set forth above, the judgment of the trial court upholding defendants' exceptions of prescription is affirmed. All costs associated with this appeal are assessed against plaintiffs, Louis and Ana Wang.
AFFIRMED.
NOTES
[1] Plaintiffs' subsequent application for supervisory writs was denied by this court on August 14, 1995. Plaintiffs thereafter filed a complaint against Woman's Hospital with the Patient's Compensation Fund on August 31, 1995. Woman's Hospital later filed a peremptory exception urging that plaintiffs' claims against the hospital be dismissed due to prescription. Following a hearing on the exception, the trial court stayed further proceedings pending the outcome of the instant appeal as to whether the plaintiffs' claims against the doctors have prescribed.
[2] The judgment as to these exceptions was not read and signed until May 30, 1996.
[3] We express no opinion as to the merits of plaintiffs' allegations of medical malpractice, the only issue before us being whether plaintiffs' claim has prescribed.